## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARLON PENDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 07 CV 6648 |
| | ) | |
| v. | ) | |
| | ) | Judge Zagel |
| PAMELA FISH, CHICAGO POLICE | ) | Magistrate Judge Denlow |
| DETECTIVE JACK STEWART, | ) | |
| CHICAGO POLICE DETECTIVE | ) | |
| STEVEN BARNES, and the CITY OF | ) | JURY DEMAND |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS JACK STEWART AND STEPHEN BARNAS'
## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES Defendants, JACK STEWART and STEPHEN BARNAS, by and

through their attorneys, JAMES G. SOTOS and JOHN J. TIMBO of JAMES G. SOTOS &

ASSOCIATES, LTD., and in answer to Plaintiff's Complaint state the following unto this

Honorable Court:

### INTRODUCTION

1.      In this action, Plaintiff Marlon Pendleton seeks relief against former Chicago

Police crime lab analyst Pamela Fish, Chicago Police Detectives Jack Stewart and Steven Barnes

and the City of Chicago for actions and omissions that caused Plaintiff unnecessarily to endure

years of wrongful incarceration for sexual assault and armed robbery of one A.H. that he was

falsely accused of committing.  Defendants Stewart and Barnes manipulated A.H. into

identifying Plaintiff at trial and prepared incomplete and false police reports that failed to reveal

the full scope and nature of their manipulative tactics.  Defendant Fish prepared an incomplete

and egregiously misleading lab report in the course of the investigation of the sexual assault in

which she failed to reveal that the crime lab had possession of genetic material that could be

subjected to a DNA test with the potential to completely exonerate Plaintiff. Fish's incomplete

and misleading report delayed by many years Plaintiff's ability to obtain DNA testing on

evidence that Fish had analyzed.

**ANSWER:**    Defendants deny the allegations contained in paragraph 1.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation

under color of state law of Plaintiff's rights as secured by the United States Constitution as well

as deprivation of rights under State law.

**ANSWER:**    Defendants admit that this complaint is brought pursuant to 42 U.S.C. § 1983, but
         deny that Plaintiff was deprived of any rights under the Constitution or state law.

3.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is

proper in the Northern District of Illinois under 28 U.S.C. § 1391 (b). A substantial part of the

events or omissions giving rise to Plaintiff's claims asserted herein occurred in this judicial

district.

**ANSWER:**    Defendants admit that this Court has jurisdiction over Plaintiff's claims pursuant
         to 28 U.S.C. §§ 1331 and 1367 and that venue is proper in the Northern District of
         Illinois.

## THE PARTIES

4.    Plaintiff Marlon Pendleton is an African American man who was falsely accused

of aggravated criminal sexual assault and armed robbery and was tried and convicted of those

offenses in the Circuit Court of Cook County.

**ANSWER:**   Defendants admit that Plaintiff was tried and convicted of aggravated criminal sexual assault and armed robbery in the Circuit Court of Cook County, but deny that Plaintiff was falsely accused of such crimes.

5.      Defendant Pamela Fish was, at the time she took the actions giving rise to Plaintiff's cause of action, an employee of the Chicago Police Department crime Lab and the City of Chicago.  Defendant Fish is sued in her individual capacity.  She acted under color of state law and in the scope of her employment while engaging in the actions alleged in this complaint.

**ANSWER:**   Defendants admit the allegations contained in paragraph 5.

6.      Defendant Chicago Police Detectives Jack Stewart and Steven Barnes were, at the time they took the actions giving rise to Plaintiff's cause of action, employees of the Chicago Police Department and the City of Chicago.  Stewart and Barnes are sued in their individual capacities.  They acted under color of state law and in the scope of their employment while engaging in the actions alleged in this complaint.

**ANSWER:**   Defendants admit that at the time of the complained of acts they were employees of the Chicago Police Department and the City of Chicago, and were acting under color of state law and in the scope of their employment.  Defendants deny any allegation that they violated any of Plaintiff's rights.

7.      Defendant City of Chicago is an Illinois municipal corporation which employed Defendants Barnes, Fish and Stewart at the time they took the actions giving rise to Plaintiff's cause of action.

**ANSWER:**   Defendants admit the allegation contained in paragraph 7.

## ALLEGATIONS OF FACT

### The Sexual Assault and Armed Robbery of A.H.

8.      On October 3, 1992, while on her way to work, A.H. was raped and robbed at

gunpoint at about 6:00 a.m. by an African American man who was a stranger to her. The attacker

fled the scene and remained at large. Following the attack, on instructions from the police, A.H.

went to a hospital, where a sexual assault "kit" was prepared. Swabs were taken from her

vaginal, rectal and oral cavities and were preserved for future investigation.

**ANSWER:**     Defendants admit the allegations contained in the first, second, and third
sentences. Defendant further admits that swabs were taken from the victim's
vaginal and oral cavities and preserved for future investigation, but states that they
lack sufficient information to form a belief as to the truth or falsity of the
remaining allegation that swabs were taken from the victim's rectal cavity.

9.     Initially, the Chicago Police were left with no leads and no ability to locate a

suspect.

**ANSWER:**     Defendants deny the allegations contained in paragraph 9.

**Defendants Stewart and Barnes Manipulate A.H.
Into Falsely Identifying Plaintiff as her Attacker**

10.     A full six-months after the assault, in April 1993, A.H. allegedly saw on television

a composite sketch of a man wanted for rape and believed that it was a sketch of the same man

who had raped her. A full two and a half weeks later, A.H. allegedly contacted the police.

Detectives arrived at her house and escorted her to Area 1 detective headquarters so that she

could view a lineup in which Plaintiff was displayed. At Area 1, prior to the lineup, Police

detectives escorted Plaintiff, with his hands cuffed in front of him, past a room in which A.H.

was waiting to view the lineup. Plaintiff was clearly visible to A.H., who did not see any other

lineup participants prior to the lineup. After viewing the lineup, A.H. incorrectly identified

Plaintiff as the perpetrator.

**ANSWER:**     Defendants admit that victim A.H. has testified that in or about April, 1993, she
saw a composite sketch of a man wanted for rape and believed that it was a sketch
of the same man who attacked her, and that she contacted Chicago Police two
weeks later. Defendants state that they lack sufficient information to form a belief

as to the truth or falsity of the allegations that (1) unidentified detectives at Area 1 allegedly escorted Plaintiff, with his hands cuffed in front of him, past a room in which A.H. was waiting to view the lineup and where Plaintiff was visible to the victim, (2) that Plaintiff did not see any other lineup participants prior to the lineup, and (3) that the victim made an incorrect identification of Plaintiff as the perpetrator. Defendants deny that they would have caused Plaintiff to be escorted in front of the victim prior to any lineup.

11.    Detectives Stewart and Barnes knew that A.H.'s identification of Plaintiff was extremely weak. Among other things:

      i.      The person who attacked A.H. was a stranger to her whom she had an opportunity to observe under conditions of extreme stress;

      ii.     A full six months elapsed between the attack and A.H.'s identification of the Plaintiff;

     iii.    Plaintiff does not match the description that A.H. originally gave of her attacker in a number of key aspects: (a) A.H. described her attacker as weighing approximately 170 pounds, but Plaintiff is very slender and weighed only 135 pounds at the time of the identification; (b) A.H. said that her attacker carried a gun at all times in his right hand, but Plaintiff is left handed; (c) A.H. described her attacker as having had "rotten teeth" (a combination of stubs and black teeth), but Plaintiff's teeth are in good condition;

     iv.    The lineup was improperly and suggestively conducted because A.H. had an opportunity to observe Plaintiff in handcuffs prior to the lineup.

**ANSWER:**    Defendants deny the allegations contained in paragraph 11.

12.    A.H. identified Plaintiff because of manipulative, suggestive and otherwise improper identification methods employed by Detectives Stewart and Barnes before, during, and after the lineup.  If Stewart and Barnes had not engaged in such tactics, A.H. would never have identified as her attacker a person so dissimilar to the actual perpetrator.

**ANSWER:**    Defendants deny the allegations contained in paragraph 12.

13.    Stewart and Barnes prepared false and incomplete police reports in which they failed to disclose the manipulative, suggestive and improper tactics they had employed in order to manipulate A.H. into identifying Plaintiff as her attacker.

**ANSWER:**    Defendants deny the allegations contained in paragraph 13.

14.    Although DNA testing was available and frequently performed in sexual assault and other investigations conducted by the Chicago Police at the time of A.H. sexual assault investigation, Stewart and Barnes did not request the Chicago Police crime lab to conduct DNA testing in this investigation - even though they knew that a sexual assault kit had been prepared following the attack on A.H.

**ANSWER:**    Defendants admit that DNA testing was available at the time of the sexual assault upon the victim A.H., but states they lack sufficient information to form a belief as to the truth or falsity of the allegation that DNA testing was "frequently performed" in sexual assault and other investigations at the time of the A.H. assault, and state they lack sufficient information to form a belief as to the truth or falsity of the allegation that they did not request the Chicago Police crime lab to conduct DNA testing in this case.

15.    Following A.H.'s identification, Plaintiff was falsely charged with her sexual assault.

**ANSWER:**    Defendants admit that Plaintiff was charged with the sexual assault of A.H. following her identification, but deny that he was falsely charged.

### Defendant Fish's Incomplete and Misleading Report Stymies
### Plaintiff's Efforts to Prove His Innocence

16.    Before, during and following his trial for the sexual assault of A.H. in the Circuit

Court of Cook County, Plaintiff emphatically and insistently maintained that a DNA test would

establish his innocence.

**ANSWER:**    Defendants admit that before, during, and following his trial for the sexual assault
of A.H. Plaintiff maintained that a DNA test would establish his innocence.

17.    In January 1994, as a result of a request from Plaintiff's attorney, the Chicago

Police Crime Lab tested the swabs from the A.H. rape kit and determined that spermatozoa and

semen were present on the vaginal swab.  In connection with this testing, the Chicago Police

criminologist Joel Schultze prepared extracts from the swabs, which he retained in the Police

crime lab to await further instructions regarding testing.  Schultze prepared a report documenting

his test results and the retention of the extracts.  Following Schultze's analysis, the swabs were

transferred to the Chicago Police Evidence and Recovered Property Section.

**ANSWER:**    Defendants admit the allegations contained in paragraph 17.

18.    Upon learning that sperm and semen were available to be tested, Plaintiff

requested a DNA analysis of this material to establish that it had originated from another person

and not from Plaintiff.  In order to facilitate this analysis, Plaintiff provided a sample of his

blood.  A blood standard was also obtained from A.H.

**ANSWER:**    Defendants admit the allegations contained in paragraph 18.

19.    Defendant Fish arranged for the swabs taken from A.H. to be transferred from

Evidence and Recovered Property to the Crime Lab.  She then made a determination as to the

amount of sperm available from those swabs for testing.  The quantity of sperm from the swabs

was limited. There is no record of whether Fish examined the extracts that Schultze had earlier

prepared and retained in the crime lab.

**ANSWER:**     Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegation that Defendant Fish arranged for the swabs taken
from A.H. to be transferred from ERPS to the Crime Lab, that Fish made a
determination as to the amount of sperm available from those swabs for testing, or
that there is no record of whether Fish examined the extracts that Schultze had
earlier prepared and retained in the crime lab. Defendants admit that the quantity
of sperm from the swabs was limited.

20.     In 1994, when Plaintiff made his request for DNA analysis, the Chicago Police

Crime Lab routinely performed DQ-alpha testing. DQ-alpha testing used a technique called

PCR, or polymerase chain reaction, which could create identical copies of very small amounts of

genetic material, increasing the quantities of material until the threshold that made testing

possible was reached. DQ-alpha testing could reliably *exclude* persons as possible donors, but

was less useful to positively identify offenders, since this form of testing could only assign one of

21 possible subtypes to a particular sample.

**ANSWER:**     Defendants deny that the Chicago Crime Lab routinely performed DQ-alpha
testing in 1994, but admit the general description of what this particular test
entails.

21.     In 1994, the Crime Lab also routinely performed restriction fragment length

polymorphism ("RFLP") testing. RFLP testing was highly discriminating in that it could

determine with a very high degree of probability that a particular sample had arisen from a

particular donor, to the exclusion of the vast majority of human individuals. However, RFLP

testing required a large amount of high quality (*i.e.* non-degraded) sample, which would be

consumed during the testing.

**ANSWER:**     Defendants deny that the Chicago Crime Lab routinely performed restriction
fragment length polymorphism testing in 1994, but admit the general description
of what this particular test entails.

22.    Defendant Fish did not consult with Plaintiff or his counsel prior to commencing

DNA analysis of the A.H. sexual assault evidence.  Even though there was a limited quantity of

sperm available for testing, most of which would be consumed in an RFLP test, Fish elected to

first conduct an RFLP test of the sample.  Her report asserts that "[n]o DNA profile was obtained

from the male fraction of the vaginal swab" during the test.  The report also states that an

"[i]nsufficient amount of high molecular weight DNA [was] isolated [from the seminal material

on the vaginal swab] for comparison."

**ANSWER:**    Defendants admit that the cited quotations were taken from Fish's report, but state
that they lack sufficient information to form a belief as to the truth or falsity of the
allegations contained in the first and second sentences.

23.    The Chicago Police Department claims that it is unable to locate defendant Fish's

original lab file.  The Police inability to locate this file is inexplicable.  There is no justifiable

reason for the Police to have destroyed these documents.

**ANSWER:**    Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegation contained in the first sentence.  Defendants deny
the remaining allegations contained in paragraph 23.

24.    Instead of the originals, the Police claim only to be able to locate a partially

illegible microfilm copy of the file.  From the microfilm, it is impossible to determine the

accuracy of Fish's assertion in her report that there was no result from the RFLP analysis.

**ANSWER:**    Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegations contained in paragraph 24.

25.    Having reportedly failed to obtain an RFLP result, defendant Fish next

performed a DQ-alpha test on a portion of the remaining sample.  Fish asserts that the DQ-alpha

test was also a failure.  Without explanation, Fish's report states that "[n]o DQ-alpha type was

obtained from the male fraction of the vaginal swab."  From the microfilm, it is impossible to

determine the accuracy of Fish's assertion in her report that there was no result from the DQ-alpha analysis.

**ANSWER:**    Defendants admit that Fish performed a DQ alpha test on a sample taken from the victim A.H., and admit the quoted language was taken from Fish's report. Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 25.

26.    Fish's lab notes reveal that, following her unsuccessful RFLP and DQ-alpha testing, enough genetic material remained from the vaginal swab to enable a qualified analyst to perform additional DQ-alpha tests with the potential to exclude Plaintiff as the source of the seminal material.

**ANSWER:**    Defendants deny the allegations contained in paragraph 26.

27.    Fish never provided these notes to the court, the prosecution, Plaintiff or Plaintiff's counsel. The only information that Fish did provide to Plaintiff and his counsel was an incomplete and misleading report that concluded that no DNA comparisons could be made from the sample because DNA profiles were not developed from the seminal material on the vaginal swab. Plaintiff's counsel reasonably concluded from the report that there was insufficient sample to enable any form of DNA testing. The prosecution vigorously argued to the court that this was in fact the case.

**ANSWER:**    Defendants deny the allegations contained in paragraph 27.

28.    Fish has a long history of preparing false and misleading reports and/or providing false and misleading testimony slanted to favor the prosecution. By way of example:

i.    In *People v. Willis*, Fish prepared a false lab report in which she asserted that serological testing of a sample from a rape victim was "inconclusive,"

when, in fact, her serological test results *excluded* Mr. Willis as the source

of the seminal material in the victim.

ii.     In *People v. Ollins, et al.,* Fish testified that, as a result of serological

testing she had performed, only one of the four defendants was excluded

as a possible source of seminal material recovered from the victim.  In

fact, contrary to her testimony, all four defendants accused of the rape

were excluded by Fish's test results.

iii.     In *People v. Holland,* Fish reported in 1995 that there was insufficient

material on the vaginal swabs for DNA testing.  In 2002, the court ordered

a form of PCR-based testing, which yielded complete DNA results and

established that Mr. Holland was not the assailant and completely

exonerated him.

**ANSWER:**     Defendants make no response to the allegations contained in paragraph 28 as said
paragraph was previously stricken by the Court.

29.     After receiving Fish's incomplete and misleading report, Plaintiff requested

appointment of an independent expert to test the genetic material recovered from A.H.  The State

opposed Plaintiff's request relying on Fish's report and asserting that independent DNA testing

would be a "waste of time," since, according to Fish, there was insufficient sample to test.  Based

on the State's argument and Fish's "expert" report, the court denied Plaintiff's request for

independent testing.

**ANSWER:**     Defendants admit that the Court denied Plaintiff's request for independent testing,
but deny that Fish's report was incomplete and misleading.

30.     Following Plaintiff's unsuccessful request for an independent evaluation of the

evidence, he was tried in the Circuit Court of Cook County, convicted of the rape of AH. and, on

February 29, 1996, was sentenced to serve 20 years in the Illinois Department of Corrections.

**ANSWER:**     Defendants admit that Plaintiff was convicted of the sexual assault of A.H. and on
February 29, 1996, was sentenced to serve 20 years in the Illinois Department of
Corrections.  Defendants state that they lack sufficient information to form a
belief as to the truth or falsity of the allegation that Plaintiff made an unsuccessful
request for an independent evaluation of the evidence prior to his conviction.

31.     At his sentencing hearing, Plaintiff complained that there had been no testimony

at trial regarding how Fish had come to her conclusions about the insufficiency of the sample.

Plaintiff again requested an independent DNA analysis.  That request was ignored.

**ANSWER:**     Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegations contained in paragraph 31.

32.     On appeal from his conviction, Plaintiff argued that the Circuit Court had abused

its discretion in denying him an independent expert.  The Appellate Court summarily rejected

this argument, relying, like the Circuit Court, on Fish's incomplete and misleading report to hold

that "it would be a useless act to order further testing, where there were insufficient samples to

test."

**ANSWER:**     Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegations contained in paragraph 32, but specifically deny
that Fish's report was incomplete or misleading.

33.     Plaintiff made a subsequent *pro se* request for a DNA test, which was denied in

the trial court on March 3, 2000.  The Circuit Court's denial was affirmed on appeal a mere 19

days later - on March 22.

**ANSWER:**     Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegations contained in paragraph 33.

34.     Plaintiff made a renewed request for DNA testing in August 2001, this time with

the assistance of counsel, but the motion was once again denied.

**ANSWER:**    Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 34.

35.    Finally in 2005 - twelve years after he was falsely identified as A.H.'s attacker-

represented by the Northwestern University School of Law's Center on Wrongful Convictions,

Plaintiff was able, notwithstanding the Fish report, to obtain a court order for independent DNA

testing of the evidence. A DNA test conducted in 2006 confirmed that Plaintiff was factually

innocent of the rape of A.H.

**ANSWER:**    Defendants admit that Plaintiff obtained a court order for independent DNA testing of the evidence in 2005, and that a DNA test conducted in 2006 purportedly excluded Plaintiff as a source of the DNA sample tested. Defendants deny that the 2006 DNA test factually confirmed Plaintiff's innocence.

36.    On November 30, 2006, the Circuit Court of Cook County vacated Plaintiff's

sentence and directed that he be immediately released from custody. Noting that Mr. Pendleton

had spent a great deal of time in custody for a crime he obviously did not commit, the Circuit

Court judge noted that, for Plaintiff, "even one more day in custody would not be in conformance

with justice and good conscience." Mr. Pendleton's conviction was vacated on December 29,

2006.

**ANSWER:**    Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 36.

### Plaintiff's Injuries

33. (sic) Plaintiff has suffered enormous injury as a direct and proximate result of the

misconduct of the defendants alleged in the preceding paragraphs. Plaintiff spent many years

imprisoned for a crime of which he was completely innocent, not knowing whether he would

ever succeed in proving the wrongfulness of his incarceration. Following his wrongful arrest,

Plaintiff was separated from family and friends. He lost important relationships and was

deprived of life's opportunities, including the opportunity to pursue a vocation and to live as a free citizen.

**ANSWER:**   Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 33(sic), but deny that Plaintiff's alleged injuries are attributable to any misconduct by Defendants and deny that Plaintiff was wrongfully arrested.

34. (sic) Plaintiff was wrongly condemned by most who came in contact with him as a brutal rapist, which caused Plaintiff great anguish, shame, and humiliation. Plaintiff's years of incarceration were lonely and arduous. Plaintiff was deprived of years of life with his family. He was not able to be present during his mother's last illness or for her funeral. He missed the opportunity to be present for the births of his grandchildren.

**ANSWER:**   Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 34(sic), but deny that Plaintiff's alleged injuries are attributable to any misconduct by Defendants.

35. (sic) While incarcerated, Plaintiff suffered daily humiliations and indignities. Plaintiff was exposed to the contempt of other inmates because of the fact that he had been convicted of a rape. On occasion, he was physically assaulted because of the nature of the false charge against him. To survive, Plaintiff had to be constantly on guard against such attacks.

**ANSWER:**   Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 35(sic), but deny that Plaintiff's alleged injuries are attributable to any misconduct by Defendants, or that the charges against Plaintiff were false.

36. (sic) Following his release from custody, Plaintiff has struggled to adjust to life in free society.

**ANSWER:**   Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 34(sic), but deny that they caused Plaintiff any alleged injury.

**Policies and Practices: Malicious Prosecutions**

37. (sic) Defendants violated Plaintiff's Constitutional rights and otherwise injured him as a proximate result of their adherence to a City of Chicago policy and practice to "solve" serious, high profile crimes with little regard for the guilt or innocence of the alleged offender. The City's adherence to this policy and practice over the course of many years has resulted in numerous false convictions and flawed investigations.

**ANSWER:**    Defendants deny the allegations contained in paragraph 37(sic).

38. (sic) In Plaintiff's case, the tactics utilized in furtherance of this policy and practice included, but were not limited to: (a) use of coercion and manipulation to influence witness testimony; (b) withholding of exculpatory information; (c) preparation of incomplete and misleading reports; (d) the failure to perform DNA tests that could swiftly and surely exonerate persons falsely accused of sexual assaults; and (e) use of any other illegal tactics that might help to secure a conviction, without regard to the actual innocence or guilt of the accused. Similar tactics have been used in numerous other cases.

**ANSWER:**    Defendants deny the allegations contained in paragraph 38 (sic).

39. (sic) The Chicago Police Department command personnel knew of this institutional desire to resolve criminal allegations with little regard for whether the alleged offender had committed the crime. They themselves participated in this practice, which was designed to enhance police officers' personal standing in the Department.

**ANSWER:**    Defendants deny the allegations contained in paragraph 39 (sic).

40. (sic) The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department during the time period at issue, existed, and thrived because municipal policymakers failed to address them.

**ANSWER:**    Defendants deny the allegations contained in paragraph 40 (sic).

41. (sic) In addition to Plaintiff, the policies and practices described in the preceding paragraphs have caused 46 demonstrably innocent people (*i.e.,* persons whose convictions have been overturned in circumstances indicative of their innocence) to have been incarcerated following flawed Chicago Police Department investigations. Many other victims of these policies and practices remain incarcerated today, unable to demonstrate their innocence.

**ANSWER:**    Defendants deny the allegations contained in paragraph 41 (sic).

42. (sic) The widespread practices described in the proceeding paragraphs occurred because, with regard to the Police Department, the City failed: (a) to implement sufficient training; (b) to engage in meaningful oversight; and/or (c) to discipline officers and employees accused of misconduct.

**ANSWER:**    Defendants state that they lack sufficient information to form a belief as to the truth or falsity of the allegations contained in paragraph 42(sic), as said allegations are directed toward another Defendant.

43. (sic) Chicago police officers and criminologists had every reason to know that fabricating a criminal case against Plaintiff or any other innocent person posed them no threat of criminal prosecution or Departmental discipline. They also knew that they would benefit from closing cases, whether or not the person convicted had committed the crime. Because of these conditions, this system proximately caused abuses such as the misconduct at issue in this case.

**ANSWER:**    Defendants deny the allegations contained in paragraph 43 (sic).

## COUNT I
### 42 U.S.C. § 1983 - Due Process

44. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

**ANSWER:**    Defendant repeats, re-affirms, and incorporates by reference his answers to
paragraphs 1 through 43 (sic) as if fully set forth herein.

45. (sic) As described more fully above, all of the individual Defendants, while acting

individually, jointly and in conspiracy, as well as under color of law and within the scope of their

employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:**    Defendants deny the allegations contained in paragraph 45 (sic).

46. (sic) In the manner described more fully above, the Defendants deliberately withheld

exculpatory evidence and fabricated false reports, thereby misleading and misdirecting the

criminal prosecution of the Plaintiff.  Absent this misconduct, the prosecution of Plaintiff could

not and would not have been pursued.

**ANSWER:**    Defendants deny the allegations contained in paragraph 46 (sic).

47. (sic) Defendant Fish also, in the manner described above, prepared an incomplete and

egregiously misleading report that for many years thwarted Plaintiff's ability to obtain a DNA

test to establish his innocence.

**ANSWER:**    Defendants state that they lack sufficient information to form a belief as to the
truth or falsity of the allegations contained in paragraph 42(sic), as said allegations
are directed toward another Defendant.

48. (sic) The Defendant's misconduct directly resulted in the unjust criminal conviction

of Plaintiff, thereby denying him constitutional right to a fair trial, and a fair appeal thereof, in

violation of the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.

**ANSWER:**    Defendants deny the allegations contained in paragraph 48 (sic).

49. (sic) As a result of this deprivation of his constitutional right to a fair trial, Plaintiff

suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 49 (sic).

50. (sic) The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**     Defendants deny the allegations contained in paragraph 50 (sic).

51. (sic) The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department described in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

**ANSWER:**     Defendants deny the allegations contained in paragraph 51 (sic).

### COUNT II
### 42 U.S.C. § 1983 - Conspiracy

51. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER:**     Defendants repeat, re-affirm, and incorporate by reference their answers to
paragraphs 1 through 51 (sic) as if fully set forth herein.

52. (sic) The individual Defendants reached an agreement amongst themselves to falsely charge Plaintiff with the A.H. attack and to deprive Plaintiff of his Constitutional rights, as described above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 52 (sic).

53. (sic) Each individual Defendant conspired, and continues to conspire, to deprive Plaintiff of exculpatory evidence and information to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 53 (sic).

54. (sic) In this manner, the individual Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

**ANSWER:**    Defendants deny the allegations contained in paragraph 54 (sic).

55. (sic) In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER:**    Defendants deny the allegations contained in paragraph 55 (sic).

56. (sic) As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated.  He suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**    Defendants deny the allegations contained in paragraph 56 (sic).

57. (sic) The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER:**    Defendants deny the allegations contained in paragraph 57 (sic).

58. (sic) The misconduct described in this Court was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

**ANSWER:**    Defendants deny the allegations contained in paragraph 58 (sic).

## COUNT III
### 42 U.S.C. § 1983 - Failure to Intervene

59. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER:**    Defendants repeat, re-affirm, and incorporate by reference their answers to paragraphs 1 through 58 (sic) as if fully set forth herein.

60. (sic) In the manner described above, during the constitutional violations described above, one or more of the Defendants (and other as-yet-unknown individuals) stood by without intervening to prevent the misconduct.

**ANSWER:**     Defendants deny the allegations contained in paragraph 60 (sic).

61. (sic) As a result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 61 (sic).

62. (sic) The misconduct described in this Court was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**     Defendants deny the allegations contained in paragraph 62 (sic).

63. (sic) The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described in the proceeding paragraphs.

**ANSWER:**     Defendants deny the allegations contained in paragraph 63 (sic).

## COUNT IV
### State Law Claim - Malicious Prosecution

64. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER:**     Defendants repeat, re-affirm, and incorporate by reference their answers to paragraphs 1 through 63 (sic) as if fully set forth herein.

65. (sic) Defendants Stewart and Barnes caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

**ANSWER:**     Defendants deny the allegations contained in paragraph 65 (sic).

66. (sic) Defendant Fish caused to be continued a criminal prosecution of Plaintiff for which there was no probable cause.

**ANSWER:**     Defendants deny the allegations contained in paragraph 66 (sic).

67. (sic) Defendants Stewart and Barnes accused Plaintiff as a perpetrator of criminal activity knowing those accusations to be without probable cause. Defendants Stewart and Barnes made statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

**ANSWER:**     Defendants deny the allegations contained in paragraph 67 (sic).

68. (sic) Defendant Stewart's and Barnes's statements regarding Plaintiff's alleged culpability were made with knowledge that such statements were false and perjured.

**ANSWER:**     Defendants deny the allegations contained in paragraph 68 (sic).

69. (sic) All of the individual Defendants fabricated evidence and withheld exculpatory information.

**ANSWER:**     Defendants deny the allegations contained in paragraph 69 (sic).

70. (sic) The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER:**     Defendants deny the allegations contained in paragraph 70 (sic).

71. (sic) As a result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 71 (sic).

## COUNT V
### State Law Claim - Civil Conspiracy

70. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER:**     Defendants repeat, re-affirm, and incorporate by reference their answers to paragraphs 1 through 71 (sic) as if fully set forth herein.

71. (sic) As described more fully in the preceding paragraphs, the individual Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     Defendants deny the allegations contained in paragraph 71 (sic).

72. (sic) In furtherance of the conspiracy Defendants committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:**     Defendants deny the allegations contained in paragraph 72 (sic).

73. (sic) The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER:**     Defendants deny the allegations contained in paragraph 73 (sic).

74. (sic) As a proximate result of Defendants' conspiracy, Plaintiff suffered, injuries, including, but not limited to emotional distress, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 74 (sic).

### COUNT VI
### State Law Claim - Intentional Infliction of Emotional Distress

75. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER:**     Defendants repeat, re-affirm, and incorporate by reference their answers to paragraphs 1 through 74 (sic) as if fully set forth herein.

76. (sic) The acts and conduct of the individual Defendants as set forth above were extreme and outrageous.  The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 76 (sic).

77. (sic) The individual Defendants' actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

**ANSWER:**    Defendants deny the allegations contained in paragraph 77 (sic).

78. (sic) The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

**ANSWER:**    Defendants deny the allegations contained in paragraph 78 (sic).

79. (sic) As a proximate result of Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**    Defendants deny the allegations contained in paragraph 79 (sic).

### COUNT VII
### State Law Claim - Respondeat Superior

80. (sic) Plaintiff repeats and realleges the preceding paragraphs as fully alleged herein.

**ANSWER:**    Defendants repeat, re-affirm, and incorporate by reference their answers to paragraphs 1 through 79 (sic) as if fully set forth herein.

81. (sic) In committing the acts alleged in the preceding paragraphs, all of the individual defendants were members of or otherwise were agents of the Chicago Police Department, acting at all relevant times with the scope of their employment and under color of law.

**ANSWER:**    Defendants admit that they were acting within the scope of their employment and under color of law during the investigation of the sexual assault against A.H., but deny that they violated Plaintiff's rights.

82. (sic) Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:**    Defendants deny that they committed any tort, and thus deny that the City of Chicago would be liable in this case.

## COUNT VII
### State Law Claim - Indemnification

83. (sic) Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER:**    Defendant repeats, re-affirms, and incorporates by reference his answers to paragraphs 1 through 82 (sic) as if fully set forth herein.

84. (sic) Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:**    Defendants make no response to the legal assertions contained in paragraph 84 (sic).

85. (sic) The individual defendants are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    Defendants admit that they were employees of the Chicago Police Department who acted within the scope of their employment at the time of the complained of acts, but deny that they committed any misconduct.

Dated: April 1, 2008

s/John J. Timbo
John J. Timbo, Attorney No. 06238251
Attorney for Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jtimbo@jsotoslaw.com

**AFFIRMATIVE DEFENSES**

FIRST AFFIRMATIVE DEFENSE

Defendants Stewart and Barnas did not violate any clearly established constitutional right of which a reasonable person would have known. Therefore, Defendants are entitled to qualified immunity.

SECOND AFFIRMATIVE DEFENSE

Plaintiff's federal claims are barred by the two year statute of limitations applicable to claims brought pursuant to 42 U.S.C. Section 1983, and Plaintiff's state law claims are barred by the one year statute of limitations found in Section 8-101 the Illinois Tort Immunity Act (745 ILCS 10/8-101).

THIRD AFFIRMATIVE DEFENSE

With regard to Plaintiff's state law claims contained in Counts IV - VI, Defendants are entitled to immunity pursuant to Section 2-202 of the Illinois Tort Immunity Act for any complained of acts as said acts did not amount to wilful and wanton conduct in the execution or enforcement of the law.

FOURTH AFFIRMATIVE DEFENSE

With regard to Plaintiff's state law claims contained in Counts IV - VI, Defendants are entitled to immunity pursuant to Section 2-204 of the Illinois Tort Immunity Act as Defendants, in acting within the scope of their employment, cannot be liable for any injury caused by the act or omission of another person, to wit, either Pamela Fish or victim A.H.

FIFTH AFFIRMATIVE DEFENSE

With regard to Plaintiff's state law claims contained in Counts IV - VI, Defendants are entitled to immunity pursuant to Section 2-208 of the Illinois Tort Immunity Act as Defendants, in acting within the scope of their employment, did not act maliciously or without probable cause, and thus cannot be liable for the institution or prosecution of Plaintiff.

### SIXTH AFFIRMATIVE DEFENSE

With regard to Plaintiff's state law claims, the Defendants are not liable as they exercised discretion on a non-ministerial matter in investigating Plaintiff and thus are not liable for any resulting injuries. 745 ILCS 10/2-201 (1994).


DEFENDANTS DEMAND A TRIAL BY JURY

s/John J. Timbo
John J. Timbo, Attorney No. 06238251
Attorney for Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jtimbo@jsotoslaw.com

**CERTIFICATE OF SERVICE**

The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendants Jack Stewart and Stephen Barnas' Answer and Affirmative Defenses to Plaintiff's Complaint** with the Clerk of the Court on April 1, 2008 using the ECF system, which will send notification of such filing to the attached service list.

s/John J. Timbo
John J. Timbo, Attorney No. 06238251
Attorney for Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jtimbo@jsotoslaw.com

**SERVICE LIST**
**Pendleton V. City of Chicago, et al.**
**Case No. 07-6648**

**Attorneys for Plaintiff**

Locke E. Bowman, III
MacArthur Justice Center
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, IL 60611
312-503-0844
l-bowman@law.northwestern.edu

Gareth G. Morris
Law Offices of Gareth G. Morris
1704 North Dayton Street
Suite 100
Chicago, IL 60614
312-943-6178
gareth@core.com

**Attorneys for Defendants**

Jeffrey R. Kulwin
Kulwin, Masciopinto & Kulwin, LLP
161 North Clark Street
Suite 2500
Chicago, IL 60601
312-641-0300
jkulwin@kmklawllp.com

Shelly Byron Kulwin
Kulwin, Masciopinto & Kulwin, LLP
161 North Clark Street
Suite 2500
Chicago, IL 60601
312-641-0300
skulwin@kmklawllp.com