**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARLON PENDLETON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 CV 6648 |
| | ) | Judge James B. Zagel |
| **PAMELA FISH, CHICAGO POLICE** | ) | Magistrate Judge Morton Denlow |
| **DETECTIVE JACK STEWART,** | ) | |
| **CHICAGO POLICE DETECTIVE** | ) | |
| **STEVEN BARNES, and the CITY OF** | ) | |
| **CHICAGO,** | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER AND AMENDED AFFIRMATIVE DEFENSES

Defendant Pamela Fish (Fish), by and through her attorneys, KULWIN, MASCIOPINTO & KULWIN, LLP, submits her Answer and Amended Affirmative Defenses to Plaintiff's complaint (Complaint), and states as follows:

1.  In this action, Plaintiff Marion Pendleton seeks relief against former Chicago Police crime lab analyst Pamela Fish, Chicago Police Detectives Jack Stewart and Steven Barnes and the City of Chicago for actions and omissions that caused Plaintiff unnecessarily to endure years of wrongful incarceration for a sexual assault and armed robbery of one A.H. that he was falsely accused of committing. Defendants Stewart and Barnes manipulated A.H. into identifying Plaintiff at trial and prepared incomplete and false police reports that failed to reveal the full scope and nature of their manipulative tactics. Defendant Fish prepared an incomplete and egregiously misleading lab report in the course of the investigation of the sexual assault in which she failed to reveal that the crime lab had possession of genetic material that could be subjected to a DNA test with the

potential to completely exonerate Plaintiff. Fish's incomplete and misleading report delayed by many years Plaintiff's ability to obtain DNA testing on evidence that Fish had analyzed.

**ANSWER**: Fish admits that Plaintiff Marlon Pendleton (Plaintiff) purports to bring this action against her, Chicago Police Detectives Jack Stewart and Steven Barnes, and the City of Chicago (collectively, "Defendants"). Fish denies any and all remaining allegations contained in this paragraph.

2.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution as well as deprivation of rights under State law.

**ANSWER**: Fish admits that Plaintiff purports to bring this action pursuant to 42 U.S.C. § 1983, the United States Constitution and state law. Fish denies any and all remaining allegations contained in this paragraph.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1367. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiff's claims asserted herein occurred in this judicial district.

**ANSWER**: Fish admits that this Court has jurisdiction and that venue is proper. Fish denies any and all remaining allegations contained in this paragraph.

4.      Plaintiff Marlon Pendleton is an African American man who was falsely accused of aggravated criminal sexual assault and armed robbery and was tried and convicted of those offenses in the Circuit Court of Cook County.

**ANSWER**: Fish admits that Plaintiff was tried and convicted of aggravated criminal sexual assault and armed robbery in the Circuit Court of Cook County, and admits further that his

conviction was subsequently vacated.  Fish denies any and all remaining allegations contained in this paragraph.

5.      Defendant Pamela Fish was, at the time she took the actions giving rise to Plaintiff's cause of action, an employee of the Chicago Police Department Crime Lab and the City of Chicago. Defendant Fish is sued in her individual capacity. She acted under color of state law and in the scope of her employment while engaging in the actions alleged in this complaint.

**ANSWER**: Fish admits that she was employed by the Chicago Police Department Crime Lab and the City of Chicago at the time that the alleged actions occurred, but denies that she took any actions that could give rise to Plaintiff's cause of action. Fish admits that Plaintiff purports to sue her in her individual capacity.  Fish denies any and all remaining allegations contained in this paragraph.

6.      Defendant Chicago Police Detectives Jack Stewart and Steven Barnes were, at the time they took the actions giving rise to Plaintiff's cause of action, employees of the Chicago Police Department and the City of Chicago. Stewart and Barnes are sued in their individual capacities. They acted under color of state law and in the scope of their employment while engaging in the actions alleged in this complaint.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

7.      Defendant City of Chicago is an Illinois municipal corporation which employed Defendants Barnes, Fish and Stewart at the time they took the actions giving rise to Plaintiff's cause of action.

**ANSWER**: Fish admits that she was employed by the City of Chicago at the time the alleged actions underlying Plaintiff's cause of action occurred, but denies that she took any actions that could give rise to Plaintiff's cause of action. Fish has insufficient information to admit or deny the remaining allegations of this paragraph and therefore denies them.

8.      On October 3, 1992, while on her way to work, A.H. was raped and robbed at gunpoint at about 6:00 a.m. by an African American man who was a stranger to her. The attacker fled the scene and remained at large. Following the attack, on instructions from the police, A.H. went to a hospital, where a sexual assault "kit" was prepared. Swabs were taken from her vaginal, rectal and oral cavities and were preserved for future investigation.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

9.      Initially, the Chicago Police were left with no leads and no ability to locate a suspect.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

10.      A full six months after the assault, in April 1993, A.H. allegedly saw on television a composite sketch of a man wanted for rape and believed that this was a sketch of the same man who had raped her. A full two and a half weeks later, A.H. allegedly contacted the police. Detectives arrived at her house and escorted her to the Area 1 detective headquarters so that she could view a lineup in which Plaintiff was displayed. At Area 1, prior to the lineup, Police detectives escorted Plaintiff, with his hands cuffed in front of him, past a room in which A.H. was waiting to view the lineup. Plaintiff was clearly visible to A.H., who did not see any other lineup participants prior to the lineup. After viewing the lineup, A.H. incorrectly identified Plaintiff as the perpetrator.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

11.    Detectives Stewart and Barnes knew that A.H.'s identification of Plaintiff was extremely weak. Among other things:

i.    The person who attacked A.H. was a stranger to her whom she only had an opportunity to observe under conditions of extreme stress;

ii.    A full six months elapsed between the attack and A.H.'s identification of Plaintiff;

iii.    Plaintiff does not match the description that A.H. originally gave of her attacker in a number of key respects: (a) A.H. described her attacker as weighing approximately 170 pounds, but Plaintiff is very slender and weighed only 135 pounds at the time of the identification; (b) A.H. said that her attacker carried a gun at all times in his right hand, but Plaintiff is left handed; (c) A.H. described her attacker as having had "rotten teeth" (a combination of stubs and black teeth), but Plaintiff's teeth are in good condition;

iv.    The lineup was improperly and suggestively conducted because A.H. had an opportunity to observe Plaintiff in handcuffs prior to the lineup.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

12.    A.H. identified Plaintiff because of manipulative, suggestive and otherwise improper identification methods employed by Detectives Stewart and Barnes before, during, and after the

lineup. If Stewart and Barnes had not engaged in such tactics, A.H. would never have identified as her attacker a person so dissimilar to the actual perpetrator.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

13.    Stewart and Barnes prepared false and incomplete police reports in which they failed to disclose the manipulative, suggestive and improper tactics they had employed in order to manipulate A.H. into identifying Plaintiff as her attacker.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

14.    Although DNA testing was available and frequently performed in sexual assault and other investigations conducted by the Chicago Police at the time of the A.H. sexual assault investigation, Stewart and Barnes did not request the Chicago Police crime lab to conduct DNA testing in this investigation — even though they knew that a sexual assault kit had been prepared following the attack on A.H.

**ANSWER**: Fish denies the allegations contained in this paragraph.

15.    Following A.H.'s identification, Plaintiff was falsely charged with her sexual assault.

**ANSWER**: Fish admits that Plaintiff was charged with A.H.'s sexual assault.  Fish denies any and all remaining allegations contained in this paragraph.

16.    Before, during and following his trial, for the sexual assault of A.H. in the Circuit Court of Cook County, Plaintiff emphatically and insistently maintained that a DNA test would establish his innocence.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

17.    In January 1994, as a result of a request from Plaintiff's attorney, the Chicago Police Crime Lab tested the swabs from the A.H. rape kit and determined that spermatozoa and semen were present on the vaginal swab. In connection with this testing, Chicago Police criminologist Joel Schultze prepared extracts from the swabs, which he retained in the Police crime lab to await further instructions regarding testing. Schultze prepared a report documenting his test results and the retention of the extracts. Following Schultze's analysis, the swabs were transferred to the Chicago Police Evidence and Recovered Property Section.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

18.    Upon learning that sperm and semen were available to be tested, Plaintiff requested a DNA analysis of this material to establish that it had originated from another person and not from Plaintiff.  In order to facilitate this analysis, Plaintiff provided a sample of his blood. A blood standard was also obtained from A.H.

**ANSWER**: Fish admits that the Chicago Police Crime Lab ("Crime Lab") received blood standards from Plaintiff and A.H.  Fish has insufficient information to admit or deny the remaining allegations of this paragraph and therefore denies them.

19.    Defendant Fish arranged for the swabs taken from A.H., to be transferred from Evidence and Recovered Property to the Crime Lab. She then made a determination as to the amount of sperm available from those swabs for testing. The quantity of sperm from the swabs was limited.

There is no record of whether Fish examined the extracts that Schultze had earlier prepared and retained in the crime lab.

**ANSWER**: Fish denies the allegations contained in this paragraph.

20.    In 1994, when Plaintiff made his request for DNA analysis, the Chicago Police Crime Lab routinely performed DQ-alpha testing. DQ-alpha testing used a technique called PCR, or polymerase chain reaction, which could create identical copies of very small amounts of genetic material, increasing the quantities of material until the threshold that made testing possible was reached. DQ-alpha testing could reliably *exclude* persons as possible donors, but was less useful to positively identify offenders, since this form of testing could only assign one of 2l possible subtypes to a particular sample.

**ANSWER**: Fish admits that in 1994, the Crime Lab may have had access to DQ-alpha testing. Fish denies any and all remaining allegations contained in this paragraph.

21.    In 1994, the Crime Lab also routinely performed restriction fragment length polymorphism ("RFLP") testing. RFLP testing was highly discriminating in that it could determine with a very high degree of probability that a particular sample had arisen from a particular donor, to the exclusion of the vast majority of human individuals. However, RFLP testing required a large amount of high quality (*i.e.*, non-degraded) sample, which would consumed during the testing.

**ANSWER**: Fish admits that in 1994, the Crime Lab may have had access to restriction fragment length polymorphism.  Fish denies any and all remaining allegations contained in this paragraph.

22.    Defendant Fish did not consult with Plaintiff or his counsel prior to commencing DNA analysis of the A.H. sexual assault evidence. Even though there was a limited quantity of

sperm available for testing, most of which would be consumed in an RFLP test, Fish elected to first

conduct an RFLP test of the sample. Her report asserts that "[n]o DNA profile was obtained from

the male fraction of the vaginal swab" during the test. The report also states that an "[i]nsufficient

amount of high molecular weight DNA [was] isolated [from the seminal material on the vaginal

swab] for comparison."

**ANSWER**: This paragraph purports to characterize Fish's report which speaks for itself and

requires no answer.  To the extent that such an answer is required, the allegations are denied. Fish

denies any and all remaining allegations contained in this paragraph.

23.    The Chicago Police Department claims that it is unable to locate defendant Fish's

original lab file. The Police inability to locate this file is inexplicable. There is no justifiable reason

for the Police to have destroyed these documents.

**ANSWER**: The allegations contained in this paragraph constitute factual and/or legal

arguments and/or conclusions for which no answer is required.  To the extent that such an answer is

required, the allegations are denied.

24.    Instead of the originals, the Police claim only to be able to locate a partially illegible

microfilm copy of the file. From the microfilm, it is impossible to determine the accuracy of Fish's

assertion in her report that there was no result from the RFLP analysis.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions for which

no answer is required.  To the extent that such an answer is required, the allegations are denied.

25.    Having reportedly failed to obtain an RFLP result, defendant Fish next performed a

DQ-alpha test on a portion of the remaining sample. Fish asserts that the DQ-alpha test was also a

failure. Without explanation, Fish's report sates that "[n]o DQ-alpha type was obtained from the male

fraction of the vaginal swab." From the microfilm, it is impossible to determine the accuracy of Fish's assertion in her report that there was no result from the DQ-alpha analysis.

**ANSWER**: Fish admits that she performed a DQ-alpha test on a sample of A.H.'s sexual assault evidence. This paragraph purports to characterize Fish's report which speaks for itself and requires no answer. To the extent that such an answer is required, the allegations are denied. Fish denies any and all remaining allegations contained in this paragraph.

26.    Fish's lab notes reveal that, following her unsuccessful RFLP and DQ-alpha testing, enough genetic material remained from the vaginal swab to enable a qualified analyst to perform additional DQ-alpha tests with the potential to exclude Plaintiff as the source of the seminal material.

**ANSWER**: This paragraph purports to characterize Fish's lab notes which speak for themselves and requires no answer. To the extent that such an answer is required, the allegations are denied. Fish denies any and all remaining allegations contained in this paragraph.

27.    Fish never provided these notes to the court, the prosecution, Plaintiff or Plaintiff's counsel. The only information that Fish did provide to Plaintiff and his counsel was an incomplete and misleading report that concluded that no DNA comparisons could be made from the sample because DNA profiles were not developed from the seminal material on the vaginal swab. Plaintiff's counsel reasonably concluded from the report that there was insufficient sample to enable any form of DNA testing. The prosecution vigorously argued to the court that this was in fact the case.

**ANSWER**: Fish denies the allegations contained in this paragraph.

28.    Fish has a long history of preparing false and misleading reports and/or providing false and misleading testimony slanted to favor the prosecution. By way of example:

i. In *People v. Willis*, Fish prepared a false lab report in which she asserted that serological testing of a sample from a rape victim was "inconclusive," when, in fact, her serological test results *excluded* Mr. Willis as the source of the seminal material in the victim.

ii. In *People v. Ollins, et al.*,Fish testified that, as a result of serological testing she had performed, only one of four defendants was excluded as a possible source of seminal material recovered from the victim. In fact, contrary to her testimony, all four defendants accused of the rape were excluded by Fish's test results.

iii. In *People v. Holland*, Fish reported in 1995 that there was insufficient material on the vaginal swabs for DNA testing. In 2002, the court ordered a form of PCR-based testing, which yielded complete DNA results and established that Mr. Holland was not the assailant and completely exonerated him.

**<u>ANSWER</u>**: The allegations contained in this paragraph constitute impertinent and scandalous allegations under Federal Rule of Civil Procedure 12(f) for which no answer is required, as set forth in Fish's *12(f) Motion to Strike Impertinent and Scandalous Allegations from Plaintiff' Complaint*, which is filed concurrently with this Answer. Pending the Court's ruling on Fish's motion to strike and to the extent that an answer is required, the allegations are denied.

29.    After receiving Fish's incomplete and misleading report, Plaintiff requested appointment of an independent expert to test the genetic material recovered from A.H. The State opposed Plaintiff's request relying on Fish's report and asserting that independent DNA testing

would be "a waste of time," since, according to Fish, there was insufficient sample to test. Based on the State's argument and Fish's "expert" report, the court denied Plaintiff's request for independent testing.

**ANSWER**: This paragraph purports to characterize Fish's report which speaks for itself and requires no answer.  Fish moreover has insufficient information to admit or deny the remaining allegations of this paragraph and therefore denies them. To the extent that such an answer is required, the allegations are denied.

30.    Following Plaintiff's unsuccessful request for an independent evaluation of the evidence, he was tried in the Circuit Court of Cook County, convicted of the rape of A.H. and, on February 29, 1996, was sentenced to serve 20 years in the Illinois Department of Corrections.

**ANSWER**: Fish admits that Plaintiff was convicted and sentenced to 20 years in the Illinois Department of Corrections for the rape of A.H.  Fish denies any and all remaining allegations contained in this paragraph.

31.    At his sentencing hearing, Plaintiff complained that there had been no testimony at trial regarding how Fish had come to her conclusions about the insufficiency of the sample. Plaintiff again requested an independent DNA analysis. That request was ignored.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

32.    On appeal from his conviction, Plaintiff argued that the Circuit Court had abused its discretion in denying him an independent expert. The Appellate Court summarily rejected this argument, relying, like the Circuit Court, on Fish's incomplete and misleading report to hold that "it would be a useless act to order further testing, where there were insufficient samples to test."

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

33.     Plaintiff made a subsequent *pro se* request for a DNA test, which was denied in the trial court on March 3, 2000. The Circuit Court's denial was affirmed on appeal a mere 19 days later— on March 22.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

34.     Plaintiff made a renewed request for DNA testing in August 2001, this time with the assistance of counsel, but the motion was once again denied.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

35.     Finally in 2005— twelve years after he was falsely identified as A.H.'s attacker — represented by the Northwestern University School of Law's Center on Wrongful Convictions, Plaintiff was able, notwithstanding the Fish report, to obtain a court order for independent DNA testing of the evidence. A DNA test conducted in 2006 confirmed that Plaintiff was factually innocent of the rape of A.H.

**ANSWER**: Fish has insufficient information to admit or deny the stated and/or implied allegations of this paragraph and therefore denies them.

36.     On November 30, 2006, the Circuit Court of Cook County vacated Plaintiff's sentence and directed that he be immediately released from custody. Noting that Mr. Pendleton had spent a great deal of time in custody for a crime he obviously did not commit, the Circuit Court judge noted

that, for Plaintiff, "even one more day in custody would not be in conformance with justice and good conscience." Mr. Pendleton's conviction was vacated on December 29, 2006.

**ANSWER**: Fish admits that Plaintiff's sentence and conviction were vacated. Fish denies any and all remaining allegations contained in this paragraph.

33.[1]    Plaintiff has suffered enormous injury as a direct and proximate result of the misconduct of the defendants alleged in the preceding paragraphs. Plaintiff spent many years imprisoned for a crime of which he was completely innocent, not knowing whether he would ever succeed in proving the wrongfulness of his incarceration. Following his wrongful arrest, Plaintiff was separated from family and friends. He lost important relationships and was deprived of life's opportunities, including the opportunity to pursue a vocation and to live as a free citizen.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions and/or Plaintiff's characterization of his claim(s) for relief for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

34.    Plaintiff was wrongly condemned by most who came in contact with him as a brutal rapist, which caused Plaintiff great anguish, shame, and humiliation. Plaintiff's years of incarceration were lonely and arduous. Plaintiff was deprived of years of life with his family. He was not able to be present during his mother's last illness or for her funeral. He missed the opportunity to be present for the births of his grandchildren.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions and/or Plaintiff's characterization of his claim(s) for relief for which no answer is required.  Fish moreover

---

[1] Here, Plaintiff numbered paragraph "37 " as paragraph "33" and continues therefrom.  For the sake of consistency, Fish adopts Plaintiff's numbering in her Answer.

has insufficient information to admit or deny the stated and/or implied allegations of this paragraph. To the extent that such an answer is required, the allegations are denied.

35.     While incarcerated, Plaintiff suffered daily humiliations and indignities. Plaintiff was exposed to the contempt of other inmates because of the fact that he had been convicted of a rape. On one occasion, he was physically assaulted because of the nature of the false charge against him. To survive, Plaintiff had to be constantly on guard against such attacks.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions and/or Plaintiff's characterization of his claim(s) for relief for which no answer is required.  Fish moreover has insufficient information to admit or deny the stated and/or implied allegations of this paragraph. To the extent that such an answer is required, the allegations are denied.

36.     Following his release from custody, Plaintiff has struggled to adjust to life in free society.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions and/or Plaintiff's characterization of his claim(s) for relief for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

37.     Defendants violated Plaintiff's Constitutional rights and otherwise injured him as a proximate result of their adherence to a City of Chicago policy and practice to "solve" serious, high profile crimes with little regard for the guilt or innocence of the alleged offender. The City's adherence to this policy and practice over the course of many years has resulted in numerous false convictions and flawed investigations.

**ANSWER**: Fish denies the allegations contained in this paragraph.

38.    In Plaintiff's case, the tactics utilized in furtherance of this policy and practice included, but were not limited to: (a) use of coercion and manipulation to influence witness testimony; (b) withholding of exculpatory information; (c) preparation of incomplete and misleading reports; (d) the failure to perform DNA tests that could swiftly and surely exonerate persons falsely accused of sexual assaults; and (e) use of any other illegal tactics that might help to secure a conviction, without regard to the actual innocence or guilt of the accused. Similar tactics have been used in numerous other cases.

**ANSWER**: Fish denies the allegations contained in this paragraph.

39.    The Chicago Police Department command personnel knew of this institutional desire to resolve criminal allegations with little regard for whether the alleged offender had committed the crime. They themselves participated in this practice, which was designed to enhance police officers' personal standing in the Department.

**ANSWER**: Fish denies the allegations contained in this paragraph.

40.    The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department during the time period at issue, existed, and thrived because municipal policymakers failed to address them.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

41.    In addition to Plaintiff, the policies and practices described in the preceding paragraphs have caused 46 demonstrably innocent people (*i.e.*, persons whose convictions have been overturned in circumstances indicative of their innocence) to have been incarcerated following flawed

Chicago Police Department investigations. Many other victims of these policies and practices remain incarcerated today, unable to demonstrate their innocence.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

42.     The widespread practices described in the proceeding paragraphs occurred because, with regard to the Police Department, the City failed: (a) to implement sufficient training; (b) to engage in meaningful oversight; and/or (c) to discipline officers and employees accused of misconduct.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

43.     Chicago police officers and criminologists had every reason to know that fabricating a criminal case against Plaintiff or any other innocent person posed them no threat of criminal prosecution or Departmental discipline. They also knew that they would benefit from closing cases, whether or not the person convicted had committed the crime. Because of these conditions, this system proximately caused abuses such as the misconduct at issue in this case.

**ANSWER**: Fish denies the allegations contained in this paragraph.

### COUNT I
### 42 U.S.C. § 1983 — Due Process

44.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

45.     As described more fully above, all of the individual Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER**: Fish denies the allegations contained in this paragraph.

46.     In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence and fabricated false reports, thereby misleading and misdirecting the criminal prosecution of the Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER**: Fish denies the allegations contained in this paragraph.

47.     Defendant Fish also, in the manner described above, prepared an incomplete and egregiously misleading report that for many years thwarted Plaintiff's ability to obtain a DNA test to establish his innocence.

**ANSWER**: Fish denies the allegations contained in this paragraph.

48.     The Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER**: Fish denies the allegations contained in this paragraph.

49.     As a result of this deprivation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

50.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER**: Fish denies the allegations contained in this paragraph.

51.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department described in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

**ANSWER**: Fish denies the allegations contained in this paragraph.

## COUNT II
## 42 U.S.C. § 1983 — Conspiracy

51.[2]    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

52.    The individual Defendants reached an agreement amongst themselves to falsely charge Plaintiff with the A.H. attack and to deprive Plaintiff of his Constitutional rights, as described above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

53.    Each individual Defendant conspired, and continues to conspire, to deprive Plaintiff of exculpatory evidence and information to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

54.    In this manner, the individual Defendants, acting in concert with other unknown co-conspirators, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

**ANSWER**: Fish denies the allegations contained in this paragraph.

55.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

---

[2] Here, Plaintiff numbered paragraph "52 " as paragraph "51" and continues therefrom.

19

**ANSWER**: Fish denies the allegations contained in this paragraph.

56.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated. He suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

57.     The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER**: Fish denies the allegations contained in this paragraph.

58.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

**ANSWER**: Fish denies the allegations contained in this paragraph.

## COUNT III
## 42 U.S.C. § 1983 — Failure to Intervene

59.     Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

60.     In the manner described above, during the constitutional violations described above, one or more of the Defendants (and other as-yet-unknown individuals) stood by without intervening to prevent the misconduct.

**ANSWER**: Fish denies the allegations contained in this paragraph.

61.     As a result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, emotional distress, as

is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

62.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**ANSWER**: Fish denies the allegations contained in this paragraph.

63.    The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described in the proceeding paragraphs.

**ANSWER**: Fish denies the allegations contained in this paragraph.

**COUNT IV**
**State Law Claim — Malicious Prosecution**

64.    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

65.    Defendants Stewart and Barnes caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

**ANSWER**: The allegations contained in this paragraph do not relate to Fish and require no answer.  To the extent that such an answer is required, the allegations are denied.

66.    Defendant Fish caused to be continued a criminal prosecution of Plaintiff for which there was no probable cause.

**ANSWER**: Fish denies the allegations contained in this paragraph.

67.    Defendants Stewart and Barnes accused Plaintiff as a perpetrator of criminal activity knowing those accusations to be without probable cause. Defendants Stewart and Barnes made

21

statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings.

**ANSWER**: The allegations contained in this paragraph do not relate to Fish and require no answer.  To the extent that such an answer is required, the allegations are denied.

68.    Defendant Stewart's and Barnes's statements regarding Plaintiff's alleged culpability were made with knowledge that such statements were false and perjured.

**ANSWER**: The allegations contained in this paragraph do not relate to Fish and require no answer.  To the extent that such an answer is required, the allegations are denied.

69.    All of the individual Defendants fabricated evidence and withheld exculpatory information.

**ANSWER**: Fish denies the allegations contained in this paragraph.

70.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER**: Fish denies the allegations contained in this paragraph.

71.    As a result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

## COUNT V
### State Law Claim — Civil Conspiracy

70.[3]    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

---

[3] Here, Plaintiff numbered paragraph "72 " as paragraph "70" and continues therefrom.

71.    As described more fully in the preceding paragraphs, the individual Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER**: Fish denies the allegations contained in this paragraph.

72.    In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

**ANSWER**: Fish denies the allegations contained in this paragraph.

73.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER**: Fish denies the allegations contained in this paragraph.

74.    As a proximate result of Defendants' conspiracy, Plaintiff suffered injuries, including, but not limited to emotional distress, as is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

### COUNT VI
### State Law Claim — Intentional Infliction of Emotional Distress

75.    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish denies the allegations contained in this paragraph.

76.    The acts and conduct of the individual Defendants as set forth above were extreme and outrageous. The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

77.    The individual Defendants' actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional

distress.

**ANSWER**: Fish denies the allegations contained in this paragraph.

78.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to the rights of others.

**ANSWER**: Fish denies the allegations contained in this paragraph.

79.    As a proximate result of Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER**: Fish denies the allegations contained in this paragraph.

## COUNT VII
### State Law Claim — Respondeat Superior

80.    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

81.    In committing the acts alleged in the preceding paragraphs, all of the individual defendants were members of or otherwise were agents of the Chicago Police Department, acting at all relevant times with the scope of their employment and under color of law.

**ANSWER**: Fish denies the allegations contained in this paragraph.

82.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

## COUNT VIII
### State Law Claim — Indemnification

83.    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein.

**ANSWER**: Fish repeats and realleges the preceding paragraphs as if fully set forth herein.

24

84.    Illinois law provides that public entities are directed to pay any tort judgment form compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER**: The allegations contained in this paragraph constitute legal conclusions for which no answer is required.  To the extent that such an answer is required, the allegations are denied.

85.    The individual defendants are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER**: Fish denies the allegations contained in this paragraph.

WHEREFORE, Defendant Pamela Fish requests that judgment be entered in her favor and award her all costs, expenses and attorneys fees as allowed by state and federal law in the defense of this lawsuit.

## AMENDED AFFIRMATIVE DEFENSES

### AFFIRMATIVE DEFENSE I

Fish acted solely in her capacity as an employee of the Chicago Police Department Crime Lab and the City of Chicago while processing any evidence relating to Plaintiff's criminal case. Therefore, she is entitled to any and all immunities provided to her under the Illinois Tort Immunity Act. 745 ILCS 10/2-201, et seq., 745 ILCS 10/4-102.

### AFFIRMATIVE DEFENSE II

Fish did not violate any clearly established constitutional rights of which a reasonable person would have known.  Therefore she is entitled to qualified immunity.

25

## AFFIRMATIVE DEFENSE III

Fish, as an as an employee of the Chicago Police Department Crime Lab and the City of Chicago, processed the evidence relating to Plaintiff's case in a reasonable, diligent manner that was consistent with crime lab procedures and technology available to her in 1994.

## AFFIRMATIVE DEFENSE IV

Some or all of Plaintiff's claims are barred in whole or in part by the applicable statute(s) of limitations.

## AFFIRMATIVE DEFENSE V

Plaintiff fails to state a claim upon which relief can be granted.

## AFFIRMATIVE DEFENSE VI

Fish is entitled to absolute immunity to all of the alleged claims asserted against her in the Complaint.


**DEFENDANT DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND DEFENSES.**


Respectfully Submitted,

KULWIN, MASCIOPINTO & KULWIN, LLP.

By: /s/ Shelly B. Kulwin

Shelly B. Kulwin
Anthony J. Masciopinto
Jeffrey R. Kulwin
Kristine Chung
KULWIN, MASCIOPINTO & KULWIN, LLP
161 North Clark Street, Suite 2500
Chicago, IL 60601
(312) 641-0300