IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARLON PENDLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6648 |
| | ) | |
| PAMELA FISH, CHICAGO POLICE | ) | |
| DETECTIVE JACK STEWART, | ) | The Hon. James B. Zagel |
| CHICAGO POLICE DETECTIVE | ) | |
| STEVEN BARNES, and the CITY OF | ) | |
| CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUBMISSION REGARDING OTHER BAD
ACTS OF DEFENDANT PAMELA FISH THAT PLAINTIFF
<u>SHOULD BE PERMITTED TO PURSUE IN DISCOVERY</u>**

This Court has ordered Plaintiff's counsel to present a proffer regarding the other misconduct of Defendant Pamela Fish that Plaintiff intends to explore during discovery in this case. This submission is being filed in response to the Court's order.

**THE FACTS AND CONTEXT FOR PLAINTIFF'S
NEED TO INVESTIGATE OTHER CASES IN WHICH
DEFENDANT FISH PERFORMED FORENSIC ANALYSIS**

Plaintiff was wrongfully convicted in Illinois state court of the criminal sexual assault of one A.H. In this case, Plaintiff alleges, among other things, that he unnecessarily spent years in prison as a result of Defendant Fish's deliberate failure to disclose exculpatory information—namely, the fact that the Chicago Police crime lab was in possession of enough genetic material to enable a competent forensic investigator to determine via DNA testing whether Plaintiff was the person who had raped the victim.

The record is very clear that—from the moment of Plaintiff's initial appearance in the state

1

criminal court through the post-conviction proceedings in his case—Plaintiff emphatically and continually insisted that he had been wrongfully charged with A.H.'s rape. Orally and in written submissions, Plaintiff repeatedly implored the court and prosecutors to conduct DNA testing, which, he vowed, would clear him of the crime.

The record is also clear that Plaintiff's efforts to secure a DNA test were thwarted for many years as a result of information Defendant Fish provided to prosecutors, the court, and Plaintiff's defense counsel. Plaintiff's Complaint alleges that, in violation of the *Brady* obligation, *see Newsome v. McCabe,* 256 F.3d 747, 753-53 (7th Cir. 2001), Fish prepared an incomplete and misleading report regarding the amount of biological evidence that remained in the Chicago Police crime lab's possession in the wake of unsuccessful DNA testing that Fish performed in the case.

Specifically, Plaintiff alleges that Fish performed two DNA tests on the evidence obtained from the victim. The first, an RFLP test, consumed a large portion of the available evidence and was inconclusive because, according to Fish, "[n]o DNA profile was obtained from the male fraction of the vaginal swab" as a result of the fact that an "[i]nsufficient amount of high molecular weight DNA [was] isolated [from the seminal material on the victim's vaginal swab] for comparison." The second, a PCR-based DQ-alpha test, was also inconclusive according to Fish because "[n]o DQ-alpha type was obtained from the male fraction of the vaginal swab."

For years, while Plaintiff wrongfully languished in prison, all parties—the prosecuting Assistant State's Attorneys, the presiding judge in the Circuit Court of Cook County, and the justices of the Illinois Appellate Court who reviewed Plaintiff's conviction—interpreted Defendant Fish's report to mean that further DNA testing in Plaintiff's case would be futile because there was insufficient material.

That was not true. After years of unsuccessful attempts, Plaintiff finally succeeded—in

2

2005, some twelve years following Plaintiff's wrongful arrest—in obtaining a court-ordered independent examination of the evidence. An independent analyst swiftly determined that there *was* sufficient material available for testing. In 2006, a DNA test conducted by that independent analyst completely exonerated Plaintiff—as he insisted since 1993 that it would.

Defendant Fish's mental state will be a central issue in this case. Plaintiff anticipates that Fish will argue that her report—even if misleading—was not technically false. She may also contend that, if her report was misleading, it was only unintentionally so. She may claim that she was ignorant of the fact that it was Plaintiff (as opposed to the prosecution or the police) seeking DNA testing in this case. She may say that she sincerely (but incompetently) believed there was insufficient genetic material to test.

Defendant Fish has gained considerable notoriety for having prepared misleading reports in a number of DNA and serological cases in which an innocent defendant was wrongfully convicted. She has been the subject of negative comment by the *Chicago Tribune* editorial board and, Plaintiff believes, was fired from the Illinois State Police as a result of problems in her cases.

Plaintiff must be permitted to probe in discovery for evidence from other cases that could be used to refute Fish's anticipated contention that she lacked a culpable mental state. For example, Plaintiff must be afforded the opportunity to show (a) that Fish's inaccurate reports have delayed DNA testing in other cases in which DNA testing ultimately established the defendant's innocence; (b) that in other DNA cases in which the prosecution, not the defense, was seeking a DNA test, Fish responded differently, by (i) retesting material until she obtained a result or (ii) clearly noting in her report that evidence remained on which retesting could be performed; (c) that Fish has a history of preparing false and misleading reports and/or providing false and misleading testimony slanted to favor the prosecution; and (d) that Fish and her colleagues in the Chicago Police crime

lab knew, as a matter of practice, about the strength of the evidence against the defendant and the identity of the party seeking forensic testing in particular cases.

As Plaintiff explains in the sections below, evidence falling into any of these four categories could potentially be admissible under FED. R. EVID. 404(b) to demonstrate Fish's motive, opportunity, intent, knowledge, or absence of mistake or accident in connection with the report she authored in the present case.

I.  **PLAINTIFF IS ENTITLED TO A FULL OPPORTUNITY TO PURSUE DISCOVERY IN ANY AREA THAT MAY LEAD TO ADMISSIBLE EVIDENCE.**

Under the familiar standard of FED. R. CIV. P. 26(b)(1), Plaintiff is entitled to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." This broad standard "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). It also includes information that may ultimately be inadmissible at trial, as long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1); *see also Medline Indus. v. Lizzo*, No. 08 C 5867, 2009 WL 3242299, at *3 (N.D. Ill. Oct. 6, 2009) (holding that plaintiff's questions were permissible even though some of them may have sought information that would not be admissible at trial).

Given the broad standard of relevance at the discovery stage, Plaintiff is entitled to probe for potentially admissible evidence regarding Fish's misconduct in other cases. Such discovery may lead to evidence that is admissible under FED. R. EVID. 404(b). Other courts in the Northern District of Illinois have routinely permitted broad discovery of information that is *potentially* admissible under FED. R. EVID. 404(b) and have found it inappropriate to restrict a party's inquiries at such an early stage of the litigation.

For example, in *Lepianka v. Village of Franklin Park*, No. 03 C 2991, 2004 WL 626830, at *1 (N.D. Ill. Mar. 26, 2004), the court held that the disciplinary records of the defendant officers, who were being sued for excessive force and false arrest, were discoverable "because evidence of other 'bad acts' may be relevant to establishing one of the permissible matters under Rule 404(b)." The court declined to limit the scope of discovery only to claims of excessive force and false arrest within the past five years, noting that the question of the admissibility of particular disciplinary records under Rule 404(b) would be an issue to be decided later—at the time of the trial. *Id.* at *2.

Similarly, in *Travers v. Travenol Labs., Inc.*, 94 F.R.D. 92, 93 (N.D. Ill. 1982), the court permitted the defendant employer to obtain a copy of a prior EEOC charge filed by the plaintiff employee against her former employer. The court held that the plaintiff's prior EEOC charge was relevant to her intent and motive in filing the EEOC charge in the present case. *Id.* The court did not require the defendant to specifically lay out how the circumstances of the prior charge demonstrated the plaintiff's intent in the present case, however. Instead, the court simply held that "from a discovery perspective Travenol's inquiry meets the 'reasonably calculated' threshold of Rule 404(b)." *Id.*

It is clear, therefore, that, as a threshold matter, Plaintiff should not be required to show how each instance of Fish's prior misconduct will specifically yield admissible evidence before he has even had the opportunity to obtain the information necessary to make such an argument.

**II.  FISH'S MISCONDUCT IN OTHER CASES MAY LEAD TO EVIDENCE THAT WOULD BE ADMISSIBLE TO SHOW HER MOTIVE, OPPORTUNITY, INTENT AND KNOWLEDGE AS WELL AS THE ABSENCE OF MISTAKE OR ACCIDENT IN THE PRESENT CASE.**

Plaintiff anticipates that Fish's principal argument in this case will be that she lacked a culpable mental state—her report regarding the DNA evidence was merely unintentionally misleading; she couldn't have known that her misleading statements would cause injury to Plaintiff;

5

she actually believed there was insufficient material to submit to further DNA testing, and so forth. Fish's misconduct in other cases may lead to evidence that would be admissible to challenge these arguments under FED. R. EVID. 404(b).

It is axiomatic that Rule 404(b) permits evidence of other crimes, wrongs, or acts to establish a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Menzer*, 29 F.3d 1223, 1234 (7th Cir. 1994). The Seventh Circuit has specifically held that evidence of other crimes, wrongs, or acts is admissible to show the defendant's mental state, *United States v. Robinson*, 161 F.3d 463, 469 (7th Cir. 1998), particularly by demonstrating that her "behavior was purposeful rather than accidental, since accidents usually are not repeated," *United States v. Kuipers*, 49 F.3d 1254, 1258 (7th Cir. 1995) (citations omitted); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). Indeed, evidence of other acts is particularly probative where the defendant "raises the issue of lack of intent or of mistake or accident." *Young v. Rabideau*, 821 F.2d 373, 380-81 (7th Cir. 1987).

Plaintiff intends to pursue four distinct avenues in discovery in order to probe for potentially admissible Rule 404(b) evidence that could bear on Defendant Fish's mental state in connection with her work in this case: (a) discovery relating to other DNA cases in which Fish's reports caused unnecessary delay in obtaining a DNA test that exonerated an incarcerated person; (b) discovery relating to whether Fish handled defense requests for DNA testing differently than she handled such requests from police or prosecutors; (c) discovery relating to Fish's tendency in other cases to slant reports or testimony to favor the prosecution theory that the defendant was guilty; and (d) discovery

6

relating to Fish's knowledge, as a matter of practice, that particular requests for forensic testing originated from the defense, as opposed to police or prosecutors.

It would be error for this Court to bar Plaintiff from pursuing any of these avenues during the discovery phase, thereby preventing Plaintiff from developing evidence that the Court may ultimately determine to be admissible at trial.

> A. **Discovery of other Fish-authored "inconclusive" DNA reports to probe for evidence that Fish intentionally concealed exculpatory evidence in this case.**

Plaintiff knows of one other case in which an inaccurate and misleading DNA report that Fish prepared stymied a defendant's efforts to establish his innocence via DNA analysis. In *People v. Holland*, Fish's 1995 report indicated that there was insufficient material on the victim's vaginal swab for DNA testing. On the day of trial, a defense motion for continuance to obtain independent DNA testing was denied based upon the conclusion in Fish's report. Seven years later, in 2002, Holland was able to obtain a court order for further DNA testing. This testing yielded complete DNA results and exonerated Holland.

Since *Holland* and this case present virtually identical fact patterns, Plaintiff must unquestionably be afforded the opportunity to explore in detail the facts and circumstances in *Holland* to develop admissible Rule 404(b) evidence. *Cf. Robinson*, 161 F.3d at 469 (holding that Rule 404(b) evidence of factually analogous cases is admissible to refute the defense of accident or mistake because such evidence tends to show that "behavior was purposeful rather than accidental, since accidents usually are not repeated").

Similarly, Plaintiff should be permitted to examine every DNA lab file from cases in which Fish authored an "inconclusive" DNA report. The examination of such files may yield evidence that could be admissible under Rule 404(b) under a number of potential theories. For example, comparison of the report in this case with reports Fish authored in other files could show that Fish's

7

statements regarding the insufficiency of the biological evidence on her report in this case were significantly different than statements she made in other cases. Such distinctions could well be used to prove that Fish intentionally prepared a misleading or incorrect report in this case.[1]

### B. Discovery of Fish-authored DNA reports (both conclusive and inconclusive).

More broadly, Plaintiff should be permitted to obtain discovery of all Chicago Police and Illinois State Police crime lab files from cases in which Fish performed a DNA test.

Plaintiff should be afforded the opportunity to review these files in order to determine whether they reveal a pattern in Fish's reporting of her DNA results. For example, review of those files could show that Fish reported her findings differently depending on whether the defense or the prosecution was seeking DNA testing. The review could show that in DNA cases in which the prosecution, and not the defense, sought the DNA testing, Fish would retest evidence if her initial result was inconclusive. It may also show that in such cases, Fish would clearly note in her report that there was sufficient genetic material on which retesting could be performed. Clearly, such evidence would be admissible under Rule 404(b) to show that Fish intended to conceal information by drafting her report as she did in this case.

Permitting such document review is consistent with many cases in which a plaintiff has been afforded the opportunity to explore documents in a search for probative Rule 404(b) evidence. *See, e.g., Payne v. City of LaSalle*, 610 F. Supp. 606, 607-08 (N.D. Ill. 1995) (permitting the plaintiff in a 42 U.S.C. § 1983 case to obtain discovery of the complete disciplinary files of all the officers potentially involved in the case and noting that "[u]ntil the[plaintiff] has obtained, through discovery, the official disciplinary file of the officer or officers involved, how is the [plaintiff] able to allege in his or her complaint *evidentiary* facts (as contrasted with *ultimate* or *conclusory* facts) to

---

[1] For example, if Fish's reports in cases in which the prosecution (not the defense) was seeking DNA testing are more complete and revealing than her report in this case, that fact would be evidence that Fish was deliberately concealing evidence here.

support a charge of knowing acquiescence against the employing city?"); *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 1381043, at *4-5 (N.D. Ill. May 10, 2004) (holding that defendant officers' personnel files and complaint histories are "relevant for purposes of discovery" in part because "disciplinary records containing any similar factual allegations [to the current case] may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi"); *MCI Worldcom Network Servs. v. Atlas Excavating, Inc.*, No. 02 C 4394, 2004 WL 784897, at *1 (N.D. Ill. April 9, 2004) (allowing the defendant to obtain discovery of all claims filed by the plaintiff alleging damage or loss of use of fiber-optic cables or utility lines and all claims filed against the plaintiff alleging that the plaintiff improperly or incorrectly marked the location of its fiber-optic cables or utility lines because of this information's potential relevance under Rule 404(b) and explaining that the process of "sorting out admissibility" with respect to this evidence "comes later").

  **C.** **Discovery regarding Fish's history of preparing false and misleading reports and/or providing false and misleading testimony slanted to favor the prosecution.**

Plaintiff is aware of several cases in which Fish has prepared false and misleading reports and/or provided false and misleading testimony slanted to favor the prosecution. Brief descriptions of the cases follow:

In *People v. Willis*, Fish performed serological testing, which revealed that the source of semen recovered from the scene of a rape was an A secretor. Willis, a B secretor, was therefore excluded as the source. Yet in her report and her testimony at trial, Fish concealed her findings and falsely stated that the results of her test were "inconclusive." In 1997, the court ordered DNA testing, which exonerated Willis.

In *People v. Ollins et al.*, Fish detected H antigens from a rape victim's vaginal swab. She

9

also determined that the victim was a non-secretor. To account for the presence of the H antigens on the vaginal swab, then, at least one of the sources of the semen must have been an O secretor. According to Fish's tests, the four individuals accused of the victim's rape and murder were all non-secretors. There was no way that any of these individuals—alone or in any combination—could have accounted for the presence of the H antigens on the vaginal swab.

At trial, Fish falsely testified that the semen recovered from the victim's body could have come from three of the four individuals. Her testimony did not acknowledge her discovery of the H antigens on the vaginal swab or the fact that all four of the individuals were non-secretors. In 2001—fifteen years later—the court released the evidence for additional DNA testing. As a result of that testing all four individuals were excluded as the source of the semen and exonerated.

In *People v. Adams*, Fish detected A and H antigens from the rape victim's vaginal swab. She also determined that the victim was an A secretor. Because the presence of A and H antigens was fully consistent with the blood of the victim, *anyone* have been the source of the semen, based on Fish's findings. At trial, however, Fish falsely testified that only non-secretors were potential semen sources, drastically reducing the pool of potential semen sources from 100% of the population to 20%. Fish's testimony supported the prosecution's case because Adams, the defendant, was a non-secretor.

In *People v. Reynolds*, Fish detected A and H antigens on the victim's vaginal swab. She also determined that the female victim was an A secretor, which accounted for the presence of the A and H antigens. Thus, like in the *Adams* case, anyone could have been a source of the semen. At trial—directly contradicting her approach in the *Adams* case—Fish testified that only an A individual or an O individual could be the source of the semen. In this case, Reynolds, the defendant, was an O secretor. In 1997, the court ordered DNA testing, the results of which

10

established that Reynolds was innocent.

In *People v. Wright*, Fish detected H antigens from the victim's vaginal swab. Because the victim was an O secretor—which accounted for the presence of the H antigens—anyone could have been the source of the semen. At trial—following her approach in *Reynolds* and contradicting her approach in *Adams*—Fish testified that only O secretors and non-secretors could be a source of the semen. Wright, the defendant, was an O secretor.

Evidence of Fish's actions in these cases is probative of Fish's motive to favor the prosecution and not the defense and of her intent to facilitate the conviction of the defendant—even in cases in which the defendant is innocent. Even setting aside that Fish's conclusions in several of these cases were factually incorrect, they were also internally inconsistent. Whereas in *Ollins* Fish ignored the secretor trait of each of the defendants to inculpate them, in *Adams*, *Reynolds*, and *Wright* she used the secretor trait of the defendant to inculpate him. Moreover, in *Adams*, *Reynolds*, and *Wright*, Fish was faced with essentially the same information—namely, that the antigens detected on the vaginal swab were entirely consistent with the victim's own blood type. In all three of these cases, *any male* could have been the source of the semen. Yet in *Adams* Fish concluded that only a non-secretor could have been the source, in *Reynolds* she testified that an A individual or an O individual was the source, and in *Wright* she determined that only an O secretor or a non-secretor could have been the source. Fish's methodology in all of these cases is similar in only one respect: it favored the prosecution and inculpated the defendant.

The *Willis* case is, if anything, more directly probative of Fish's motive and intent, since, in that case, Fish directly and deliberately concealed her certain knowledge that the defendant had been exonerated by her test results.

The probative value of these cases is not diminished by the fact that they involve serological

as opposed to DNA results. Under Rule 404(b), prior bad acts offered to show the defendant's state of mind need not be identical to the crimes or acts at issue. *United States v. Chaimson*, 760 F.2d 798, 805-09 (7th Cir. 1985); *see also United States v. Radseck*, 718 F.2d 233, 237 (7th Cir. 1983), *cert. denied,* 465 U.S. 1029 (1984). They need only be "similar enough and close enough in time to be relevant to the matter at hand." *United States v. Orozco*, 576 F.3d 745, 750-51 (7th Cir. 2009). "[T]he degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent." *United States v. O'Brien*, 618 F.2d 1234, 1238 (7th Cir.), *cert. denied,* 449 U.S. 858 (1980); *see also United States v. Shields*, No. 90 CR 1044, 1991 WL 237811, at * 2 (N.D. Ill. Sept. 8, 1991) ("Moreover, although the acts of bribery to which Salerno would testify are not identical to those alleged in this case, they are sufficiently similar to be probative of DeLeo's intent *vis a vis* Cooley and Shields.").

The Seventh Circuit has distinguished between the kind of Rule 404(b) evidence necessary to establish identity, or *modus operandi*, and the kind of 404(b) evidence necessary to show intent. The court has indicated that it should be more difficult to demonstrate *modus operandi* through prior acts evidence (because the culprit is not already known) than to demonstrate intent (because the culprit has already been identified). In *Chaimson*, the government had attempted to use evidence of the defendant's previous bribe payments to demonstrate *modus operandi* and intent with respect to his current charge of mail fraud. When evaluating the admission of the prior acts evidence for purposes of establishing *modus operandi*, the Seventh Circuit inquired whether the prior acts were "sufficiently idiosyncratic to permit an inference of pattern." *Chaimson*, 760 F.2d at 808-09. On the other hand, when deciding whether the prior acts were admissible to show intent, the Seventh Circuit merely asked whether the other acts were "similar enough and close enough in time." *Id.* at 807. Although the Seventh Circuit ultimately found the prior acts evidence to be

12

admissible for both purposes, it still found it necessary to distinguish the relevant standards of Rule 404(b) admissibility.

The Seventh Circuit has consistently applied these differing standards when considering the admissibility of Rule 404(b) evidence for purposes of showing intent. For example, the Seventh Circuit has held that a defendant's prior cocaine sales were admissible to show his "intent to possess distribution amounts of illicit drugs" even though the current charge involved the importation, possession, and sale of methamphetamines. *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005). Similarly, the Seventh Circuit has concluded that a defendant's prior offer to bribe a judge to dismiss a speeding ticket was admissible in the defendant's extortion prosecution involving his acceptance of money for obtaining a building permit, because "[b]oth acts concerned discussions of distributing money in order to influence an office holder's actions." *United States v. Tuchow*, 768 F.2d 855, 863 (7th Cir. 1985); *see also Young*, 821 F.2d at 380 (admitting instances of prior misconduct, including various assaults on police officers, to demonstrate the individual's state of mind and to negate his theory of lack of intent or accident).

In the same way, the admissibility of Fish's prior cases of misconduct should be evaluated under the "similar enough" test because her prior acts of misconduct will be used to show her mental state, not her *modus operandi* or identity. DNA and serology tests are similar enough for purposes of Plaintiff's inquiry into Fish's state of mind. The evidence from the serology cases, insofar as it tends to prove Fish's motive and bias, is no less probative because it arises in the serology context. Plaintiff should be allowed to obtain discovery related to these cases.

> **D.** **Discovery to establish that Fish and her colleagues in the Chicago Police crime lab knew, as a matter of practice, about the strength of the evidence against the defendant and the identity of the party seeking forensic testing in a particular case.**

Plaintiff possesses information that, in at least one case, Fish and her colleagues in the

13

Chicago Police crime lab knew about the strength of the evidence against the defendant and neglected to perform further DNA testing after obtaining inconclusive serological results. In *People v. Rollins*, a serologist who was under Fish's immediate supervision informed Fish that although the serology tests he had performed in the case were inconclusive, they had produced possible exculpatory information and he believed that the semen samples should undergo DNA testing. According to this serologist, Fish responded that there was a confession in the case and that no further testing would be conducted. The defendant, Rollins, was subsequently convicted of a series of sexual assaults in 1994.

DNA testing exonerated Rollins in 2004. Fish's failure to test DNA evidence in response to a request from one of the employees at her laboratory is potentially admissible for at least two purposes: (a) as proof that Fish and her colleagues in the Chicago Police crime lab knew, as a matter of practice, about the strength of the evidence against the defendant and the identity of the party seeking forensic testing in a particular case and (b) as proof that Fish had a motive to assist the prosecution—even in cases in which there is evidence that the defendant is innocent. Under either potential theory of relevance, Plaintiff must be permitted to develop evidence concerning this other misconduct.

## CONCLUSION

In light of the foregoing demonstration regarding the probative value of evidence of Fish's actions in other cases with respect to her mental state in this case, this Court should decline to enter any protective order and should allow Plaintiff wide latitude for discovery regarding the other bad acts of Defendant Fish.

Respectfully submitted,

**MARLON PENDLETON**


By:   /s/   Locke E. Bowman
         One of his attorneys

Locke E. Bowman
Brittany Parling
Elizabeth Sheyn
Roderick MacArthur Justice Center
Northwestern University School of Law
357 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-0844

Gareth G. Morris
1704 North Dayton Street, Suite 100
Chicago, Illinois 60614
(312) 943-6178

Jane E. Raley
Bluhm Legal Clinic
Northwestern University School of Law
357 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-8576

Jon Loevy
Rachel Steinback
Loevy & Loevy
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900

## **CERTIFICATE OF SERVICE**

  The undersigned, an attorney, certifies that he filed the foregoing document using the Court's ECF/EM system, which automatically served copies upon all parties listed on the attached Service List on Thursday, November 12, 2009, before the hour of 7:00 p.m.

                  /s/  Locke E. Bowman
                     Locke E. Bowman

**SERVICE LIST**
Pendleton v. Fish, et. al.
No. 07 CV 6648

Gareth G. Morris
1704 North Dayton Street, Suite 100
Chicago, Illinois 60614
(312) 943-6178
(312) 943-1620 (Fax)
gareth@core.com
*On behalf of Plaintiff*

Jane E. Raley
Bluhm Legal Clinic
Northwestern University School of Law
357 East Chicago Ave.
Chicago, Illinois 60611
(312) 503-8576
(312) 503-8977 (Fax)
j-raley@law.northwestern.edu
*On behalf of Plaintiff*

Jon Loevy
Rachel Steinback
Loevy & Loevy
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900
(312) 243-5902 (Fax)
jon@loevy.com
*On behalf of Plaintiff*

Shelly Kulwin
Kulwin Masciopinto & Kulwin LLP
161 North Clark Street, Suite 2500
Chicago, Illinois 60601
(312) 641-0300
(312) 855-0350 (Fax)
skulwin@kmkllp.com
*On behalf of Pamela Fish*

James G. Sotos
John J. Timbo
Christina S. White
James G. Sotos & Associates
550 East Devon Avenue, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (Fax)
jsotos@jsotoslaw.com
jtimbo@sotoslaw.com
cwhite@jsotoslaw.com
*On behalf of Defendants City of Chicago, Stephen Barnas, and Jack Stewart*