<pre>
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   MARLON PENDLETON,                    )   Docket No. 07 C 6648
                                          )
 5                    Plaintiff,          )
                                          )
 6             vs.                        )
                                          )
 7   PAMELA FISH, et al.,                 )   Chicago, Illinois
                                          )   December 18, 2009
 8                    Defendants.         )   12:00 o'clock p.m.

 9
               TRANSCRIPT OF PROCEEDINGS - STATUS
10         BEFORE THE HONORABLE JAMES B. ZAGEL

11
     APPEARANCES:
12

13   For the Plaintiff:    MacARTHUR JUSTICE CENTER
                           NORTHWESTERN UNIVERSITY SCHOOL OF LAW
14                         BY:  MR. LOCKE E. BOWMAN, III
                                MS. BRITTANY PARLING
15                         357 East Chicago Avenue
                           Chicago, IL  60611
16                         (312) 503-0844

17                             and

18                         LAW OFFICES OF GARETH G. MORRIS
                           BY:  MR. GARETH G. MORRIS
19                         1704 North Dayton Street, Suite 100
                           Chicago, IL  60614
20                         (312) 943-6178

21

22

23   Court Reporter:      MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                          Official Court Reporter
24                        219 S. Dearborn Street, Suite 1854-B
                          Chicago, Illinois  60604
25                        (312) 435-5639
</pre>

1   APPEARANCES CONTINUED:

2

3   For Defendant          KULWIN, MASCIOPINTO & KULWIN, LLP
   Pamela Fish:            BY:  MR. JEFFREY R. KULWIN
                       161 North Clark Street, Suite 2500

4                       Chicago, IL  60601
                       (312) 641-0300

5

6

7   For Defendants         JAMES G. SOTOS & ASSOCIATES
   Steven Barnes,         BY:  MR. JOHN J. TIMBO
   Jack Stewart and       550 East Devon Avenue, Suite 150

8   the City of Chicago:   Itasca, IL  60143
                       (630) 735-3300

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 12:01:14 | 1 | (The following proceedings were had in open court:) |
| 12:01:14 | 2 | THE CLERK:  2007 C 6648, Pendleton v. Fish et al. |
| 12:01:45 | 3 | MR. BOWMAN:  Good day, Judge; Locke Bowman on behalf |
| 12:01:51 | 4 | of plaintiff. |
| 12:01:52 | 5 | MS. PARLING:  Good morning, your Honor; Brittany |
| 12:01:54 | 6 | Parling on behalf of the plaintiff. |
| 12:01:55 | 7 | MR. MORRIS:  Gareth Morris also on behalf of the |
| 12:01:57 | 8 | plaintiff; good afternoon, Judge. |
| 12:01:58 | 9 | MR. TIMBO:  Good afternoon, your Honor; John Timbo on |
| 12:02:00 | 10 | behalf of defendants Steven Barnes and Jack Stewart and the |
| 12:02:03 | 11 | City of Chicago. |
| 12:02:03 | 12 | MR. KULWIN:  Good afternoon, Judge; Jeffrey Kulwin |
| 12:02:07 | 13 | K-u-l-w-i-n, on behalf of defendant Pam Fish. |
| 12:02:09 | 14 | THE COURT:  Does somebody actually have the full text |
| 12:02:19 | 15 | of the Fish report that is quoted in part here? |
| 12:02:26 | 16 | MR. BOWMAN:  Yes. |
| 12:02:27 | 17 | MS. PARLING:  Yes. |
| 12:02:28 | 18 | THE COURT:  If you do, a quick look. |
| 12:02:33 | 19 | MR. BOWMAN:  I am going to hand you -- |
| 12:02:36 | 20 | THE COURT:  I am interested in the portion that was |
| 12:02:38 | 21 | quoted in part. |
| 12:02:39 | 22 | MR. BOWMAN:  Right. |
| 12:03:29 | 23 | THE COURT:  Okay.  Thanks. |
| 12:04:02 | 24 | Let me tell you what my impression is having read the |
| 12:04:05 | 25 | two documents.  The first is that some of the discovery you |

12:04:14    1   want, and maybe significant portions of it, I am likely to

12:04:19    2   give you.  And there's some objections that have been made on

12:04:26    3   behalf of the defendant Fish that I don't regard as

12:04:31    4   significant in and of themselves.  To the extent that evidence

12:04:40    5   with respect to cases that others or you have filed that did

12:04:50    6   not result in judgment or even suit against Fish, I don't

12:04:56    7   think that takes them off the field for discovery.  It's

12:05:03    8   perfectly possible that a series of lawsuits on an issue might

12:05:09    9   fail, and then the last suit might succeed, or the most recent

12:05:14   10   suit might succeed, because there's a difference in the

12:05:17   11   cumulative weight of evidence.  And sometimes in the facts.

12:05:22   12   So that, I am not concerned with.

12:05:29   13         What concerns me is the what I regard as a fairly

12:05:38   14   narrow base on which liability is founded here, and the reason

12:05:42   15   it's a narrow base is not -- it's not the kind of case in

12:05:48   16   which you have direct tampering of evidence, nor is it the

12:05:57   17   kind of case in which the analysis made by the criminalist so

12:06:03   18   far as it went is necessarily wrong.

12:06:09   19         As I understand the gravity of the case is that a

12:06:14   20   report was filed yielding the results -- presumably accurate

12:06:22   21   results of whatever it was that test that Fish performed.  And

12:06:30   22   then the issue becomes there were other tests either that she

12:06:36   23   could have performed or that were performed later and they

12:06:40   24   weren't performed, and as a result of their not being

12:06:46   25   performed, you had an individual exonerated by the results of

12:06:50  1   the test who spent more time in custody, significantly more

12:06:57  2   time in custody, than he would otherwise have spent.

12:07:04  3          For purposes of the hearing today, I'm assuming that

12:07:16  4   there was nothing that would give rise to civil liability in

12:07:21  5   what Fish did at the time she did it and that whatever

12:07:27  6   liability there is is a result of the report she filed and the

12:07:35  7   consequences of the report that she filed.  As I understand it

12:07:40  8   -- and feel free to correct me, because I am rephrasing my

12:07:43  9   understanding -- where her fault lies is she prepared a report

12:07:48  10  which led subsequent lawyers, presumably faced with a client

12:07:55  11  who was adamant in asserting his innocence, left their client

12:08:02  12  who really, for all practical purposes, the only request was a

12:08:09  13  DNA test.

12:08:11  14         And I presume -- I am also assuming that the other

12:08:16  15  evidence in the case against him wasn't that weak.  They could

12:08:23  16  be wrong for a variety of reasons, but it was the kind of case

12:08:26  17  where one and several courts could say, well, yes, it's an

12:08:31  18  appropriate conviction, there's enough evidence, so on and so

12:08:34  19  forth.  So we are talking about a situation which has arisen

12:08:39  20  lately where there is on the record enough evidence, it turns

12:08:42  21  out that the evidence is wrong, and we know it's wrong because

12:08:46  22  of the DNA.

12:08:50  23         So the process goes along.  You have an adamant

12:08:54  24  defendant who says I didn't do it, and the answer to that

12:08:57  25  usually is, well, let's take a look at the DNA with this kind

12:09:00    1    of offense.  But nobody looked at the DNA and nobody tried to

12:09:04    2    look at the DNA because they had a report which they

12:09:09    3    interpreted to mean there isn't enough to test.

12:09:15    4         And you want to know if that report was the kind of

12:09:22    5    thing that you could persuasively argue was not done as a

12:09:27    6    result of an honest error, or even an error that wasn't so

12:09:32    7    honest, that was just careless.  So you want to know if this

12:09:38    8    happened before.

12:09:42    9         And as I understand Fish's objections, apart from

12:09:48   10    some that I am not giving any weight to, part of the objection

12:09:54   11    is that you may want to look at other instances in which you

12:10:02   12    believe you might be able to prove that Fish did the wrong

12:10:07   13    thing but the wrong thing in question was not filing a report

12:10:12   14    like this, it was something else.  And for that reason, I

12:10:21   15    think his position is, you know, maybe she did some other bad

12:10:25   16    things.  But the only thing you're going to be able to get in,

12:10:30   17    the only thing that could possibly help you, is if she wrote

12:10:34   18    reports of this kind that could or would likely be

12:10:45   19    misinterpreted to mean there was nothing left to test and as a

12:10:48   20    result of which may be others.

12:10:50   21         And then, of course, you've got all kinds of other

12:10:53   22    things about whether she would do this deliberately or whether

12:10:57   23    all of the others were honest mistakes too.

12:11:00   24         The first question that was raised in my mind is, I

12:11:08   25    don't really understand whose evidence this is because my

| 12:11:16 | 1 | assumption would be that one of Fish's defenses would not |
| 12:11:23 | 2 | merely be that I might have been careless in preparing this |
| 12:11:30 | 3 | report, but you will notice I never destroyed anything, and on |
| 12:11:37 | 4 | top of that, this was the customary report I wrote, and I have |
| 12:11:43 | 5 | done 10,000 analyses, which I think must be an overstatement |
| 12:11:48 | 6 | using this hypothetical, and a small handful of them have been |
| 12:11:53 | 7 | challenged. |
| 12:11:56 | 8 | When I am taking a look at this, I am wondering if |
| 12:12:00 | 9 | maybe this is the kind of some of the stuff, the broad |
| 12:12:05 | 10 | comprehensive thing you want is essentially also material for |
| 12:12:09 | 11 | the defense. And when I was reading this, I am wondering why |
| 12:12:17 | 12 | we're exactly at odds over this because, ordinarily, a |
| 12:12:21 | 13 | criminalist in this position will testify, I have done |
| 12:12:27 | 14 | thousands of analyses, and I am only human, but look at the |
| 12:12:32 | 15 | 999 that I got right, and here's one I got wrong, and I'm |
| 12:12:37 | 16 | really sorry about it, but I didn't do it deliberately. So |
| 12:12:42 | 17 | both of you can comment on the issue of whose evidence this |
| 12:12:46 | 18 | is. |
| 12:12:48 | 19 | MR. BOWMAN: Well -- |
| 12:12:49 | 20 | THE COURT: Meaning which side would want -- I am not |
| 12:12:53 | 21 | talking this in the classic possessive term. That which one |
| 12:12:57 | 22 | would want to introduce. |
| 12:12:59 | 23 | MR. BOWMAN: I will tell you that the thought has |
| 12:13:03 | 24 | occurred to us -- the thought you just expressed has occurred |
| 12:13:06 | 25 | to us as well, and, indeed, I don't think that as we all stand |

12:13:16  1  here now, anybody can confidently answer your query because we

12:13:22  2  don't know the information, and that's one of our fundamental

12:13:29  3  points, that, you know, I suppose there may be things that we

12:13:36  4  develop through this line of discovery that could be argued to

12:13:41  5  hurt us, there may be things that we develop that we can argue

12:13:49  6  support the drawing of an inference as to mental state along

12:13:54  7  the lines that you suggested but as we stand here now, we're

12:14:02  8  very interested to see.

12:14:05  9       And what we're particularly interested in is that

12:14:11  10  subset of cases in which the finding was made either initially

12:14:14  11  or in the ultimate report that was prepared with respect to

12:14:19  12  the analysis that it was an inconclusive DNA test, and those

12:14:25  13  are the ones that we want to carefully scrutinize.  And I am

12:14:31  14  sure there aren't 10,000 of those, and I really have no idea

12:14:37  15  how many there are, but I wouldn't be astonished to learn that

12:14:42  16  it's a fairly small universe.  Pam Fish did these kinds of

12:14:48  17  examinations, as we understand it, not having taken her

12:14:53  18  deposition yet, but our understanding is that this kind of

12:14:55  19  analysis came on line around the time of Pendleton's case, she

12:15:00  20  left the city four years later -- or three years later in

12:15:06  21  1997, and she stopped doing casework with the Illinois State

12:15:10  22  Police in 1999.  So it's a fairly short time frame.  How many

12:15:16  23  were inconclusive in that time frame that she authored the

12:15:21  24  report, I don't know.  What inferences could be drawn to

12:15:25  25  plaintiff's benefit, potentially even to Fish's benefit from

12:15:28  1   that, we don't know.  And the bottom line, as we stand here

12:15:34  2   now, seems to be that there is an articulable theory and you

12:15:44  3   have articulated it as to how this discovery could lead to

12:15:44  4   admissible evidence.

12:15:50  5        THE COURT:  Mr. Kulwin.

12:15:50  6        MR. KULWIN:  I guess I have a couple responses,

12:15:54  7   Judge.  My brief basically responded to the theories that they

12:15:57  8   put in their brief, kind of none of which are being

12:16:04  9   articulated now.  I responded to those things, and I've stated

12:16:09  10  why I don't think it's relevant there.

12:16:10  11       On the next aspect of what Mr. Bowman says, you know,

12:16:14  12  a relatively limited amount.  If he wants to -- he's going to

12:16:19  13  want to focus in, just let's look at -- first, let's search

12:16:24  14  seven years' of records.  Because the fact that she left the

12:16:27  15  City in '94 only because the City became the Illinois State

12:16:30  16  Police, for all intents and purposes, so that's a seven-year

12:16:34  17  period, and they want to look at all of the cases that she

12:16:37  18  wrote a report on.  That's the first thing you have to do,

12:16:40  19  your Honor, you have to pull every file that she wrote for

12:16:43  20  seven years.  Then you're going to have to ascertain how many

12:16:46  21  of them are inconclusive.  Then you're going to have to

12:16:49  22  ascertain what happened in the case.

12:16:54  23       THE COURT:  I actually have a fairly good idea of

12:16:57  24  what they would have to do.

12:16:59  25       MR. KULWIN:  Okay.

| | | |
|---|---|---|
| 12:16:59 | 1 | THE COURT: And I also have a fairly good idea what |
| 12:17:02 | 2 | those files look like. |
| 12:17:03 | 3 | MR. KULWIN: I recognize that you would. |
| 12:17:05 | 4 | THE COURT: And I always thought that the integration |
| 12:17:09 | 5 | or the gradual disappearance of the Chicago crime laboratory |
| 12:17:14 | 6 | was inevitable the day that they built Maywood and opened it |
| 12:17:18 | 7 | for the State Police. I just thought that's what was going to |
| 12:17:22 | 8 | happen, and it did happen. |
| 12:17:24 | 9 | MR. KULWIN: So then I'm not -- as the defendant, I |
| 12:17:27 | 10 | agree with you. I am not going to say, well, gee, that's just |
| 12:17:31 | 11 | where it's limited to, these inconclusive reports, because to |
| 12:17:34 | 12 | me, the argument that you have put forth and what I set forth |
| 12:17:36 | 13 | in my brief is exactly right, let us look at her entire body |
| 12:17:40 | 14 | of work, everything. And then let us do a statistical |
| 12:17:44 | 15 | analysis to see if there was any statistically material result |
| 12:17:49 | 16 | that came. If she did 700 examinations and nine came out |
| 12:17:58 | 17 | erroneously in the manner in which they say, is that relevant? |
| 12:18:02 | 18 | If it is, then obviously 692 are relevant as well. |
| 12:18:07 | 19 | And so I don't think you can limit it to, well, let's |
| 12:18:10 | 20 | just look at the few that there was inconclusive because it's |
| 12:18:14 | 21 | unfair. I mean, the only way -- |
| 12:18:16 | 22 | THE COURT: Yeah, bear in mind, my first thought, and |
| 12:18:22 | 23 | it's still my thought, is that some of this discovery could be |
| 12:18:25 | 24 | phased, but it was quite clear to me that there was no way |
| 12:18:34 | 25 | from the point of view of either side here that this issue |

12:18:38   1   could be resolved or that the case could actually be fairly

12:18:43   2   tried unless everybody looked at a lot of paper. I was trying

12:18:49   3   to think of a way to avoid that, and I can't.

12:18:54   4           MR. KULWIN: And may I just supplement on that,

12:18:56   5   Judge. And I don't think we should even take that step. And

12:19:00   6   here is why. It might be laudable to do an audit of Pam

12:19:07   7   Fish's work. Maybe that's a laudable goal. I don't know.

12:19:10   8           But there are legislatures and executives and law

12:19:15   9   enforcement agencies and maybe independent citizens' groups

12:19:19   10   who -- and newspaper outlets who could have and very well may

12:19:23   11   have lobbied for that effort when she lost her position, when

12:19:29   12   all of this was in the papers, but I don't think that in the

12:19:32   13   context of a civil lawsuit we should be doing that. It's a

12:19:36   14   fishing expedition. It's nothing more than that. They don't

12:19:40   15   have anything.

12:19:41   16           The reality of it is they attempted to articulate why

12:19:46   17   they wanted this evidence in their brief, and I summarized it,

12:19:51   18   and I don't see any admissible basis. How do they do it?

12:19:55   19   What's it admissible for? Okay. Is it admissible -- one of

12:20:01   20   their theories was, well, she did it depending on who made the

12:20:05   21   request. So if it's an inconclusive report and the state made

12:20:11   22   the request, well, we are not going to use that one. If the

12:20:14   23   defense made the request and it turned out to be the fellow,

12:20:16   24   we are going to use that one.

12:20:18   25           Well, how do we know if the defense made the request?

| | | |
|---|---|---|
| 12:20:21 | 1 | I will tell you in this case, nobody knows who made the |
| 12:20:23 | 2 | request anymore. They have answered and said the police and |
| 12:20:26 | 3 | the state's attorney. In their answers to interrogatories, |
| 12:20:30 | 4 | they have said the same. I know, basically -- I think |
| 12:20:33 | 5 | Mr. Timbo can confirm -- that neither defense attorney or the |
| 12:20:38 | 6 | state's attorney who was involved in the case has any |
| 12:20:41 | 7 | recollection one way or the other. |
| 12:20:42 | 8 | So let's assume that it was inconclusive. For all |
| 12:20:45 | 9 | Pam Fish knows, in this case, in this record, it was a |
| 12:20:50 | 10 | supplemental follow-up request from the state's attorney. So |
| 12:20:52 | 11 | how do we do that in that situation? We don't just look at |
| 12:20:56 | 12 | the paper, Judge. We have to talk to the people involved. |
| 12:20:59 | 13 | Their second theory is, literally their second |
| 12:21:03 | 14 | theory, she was in a conspiracy with other people in the lab. |
| 12:21:07 | 15 | They would somehow talk to the police, find out if it was a |
| 12:21:11 | 16 | thin case or a strong case, if it was a thin case, they would |
| 12:21:14 | 17 | determine somehow this is the guy. If it was a strong case, |
| 12:21:19 | 18 | maybe they could say it's inconclusive. That's their |
| 12:21:22 | 19 | secondary. |
| 12:21:23 | 20 | Their third theory and fourth theories are basically |
| 12:21:28 | 21 | propensity. They want to show that she has done this in the |
| 12:21:32 | 22 | past. That's propensity. My concern is, Judge, unless you |
| 12:21:35 | 23 | have a lengthy review of all of her files and then you have a |
| 12:21:38 | 24 | forensic person who is going to look at all of them -- and I |
| 12:21:41 | 25 | can tell you that is going to be a huge cost, not that I have |

12:21:45   1   to pay for it, but someone is going to have to pay for it --

12:21:48   2   and then you are going to have to do this other analysis and

12:21:51   3   you are going to have to have a statistical analysis, because,

12:21:54   4   otherwise, it is unfair.

12:21:56   5        It would be one thing if they could point to

12:21:59   6   something other than in this case where they said, here is a

12:22:01   7   case where -- here's four other cases, Judge, where she was

12:22:05   8   asked and there was DNA and people asked her, can we test it,

12:22:09   9   and she said there's not enough to test.  There's nothing like

12:22:13   10  that.

12:22:13   11       And I will point out, Judge, and I brought it here, I

12:22:17   12  have sat through four depositions with Ms. Fish, including one

12:22:20   13  by Barry Scheck, the ultimate DNA expert.  I have listened to

12:22:25   14  this for three years now.  And I haven't even sat on all the

12:22:30   15  evidence.  Two days at Jenner & Block in one case, going over

12:22:34   16  every detail, the way she did things and all the other things,

12:22:38   17  and by a hoard of lawyers.  And the reality is it's a fishing

12:22:44   18  expedition because they start with the premise people were

12:22:47   19  wrongly imprisoned because she got it wrong; therefore, she

12:22:50   20  must have always done it, not just that she erred, not just

12:22:57   21  that she was incompetent, not because of a variety of things

12:23:01   22  done, et cetera, et cetera, and that's not in this instance.

12:23:04   23       So I don't mean to go on and on, Judge, and get

12:23:06   24  beyond your point, but I don't see how we do this without not

12:23:11   25  only looking at a tremendous amount of paper but have it

12:23:16  1   rigorously analyzed by a variety of experts, then have

12:23:21  2   reports, then have expert testimony, all in the context of

12:23:25  3   basically what is being proposed is an audit of Ms. Fish's

12:23:28  4   work.  Let's audit her work and see how it comes out.  Great.

12:23:32  5   That may be laudable, but not in the context of a civil

12:23:35  6   lawsuit.  Not here.

12:23:38  7           MR. BOWMAN:  Judge, it's really not our intention to

12:23:44  8   audit Pam Fish's work.  We're not interested in doing any

12:23:49  9   retesting of anything.  Our review is going to be limited to

12:23:55  10  the manner in which results were presented, and the question

12:24:03  11  is, was there a different presentation of results in cases in

12:24:10  12  which the prosecution was eager for a DNA test than there was

12:24:17  13  in cases like this one where it was the defense clamoring for

12:24:22  14  the test.  As Mr. Kulwin has made clear, she's never going to

12:24:26  15  admit that she knew who made the request for the testing, and

12:24:33  16  that is going to be a question that's going to be difficult

12:24:38  17  for us to prove; namely, her knowledge.

12:24:42  18          And Rule 404(b) is very clear that in those

12:24:45  19  circumstances in which knowledge or intent or motive or the

12:24:51  20  like is an issue, that's the kind of circumstance in which an

12:24:55  21  examination into other cases is appropriate and the evidence

12:25:02  22  from the other cases may be -- may well be admissible.  So

12:25:07  23  that's precisely what we're interested in getting into.

12:25:15  24          And what we are talking about is a review, as your

12:25:20  25  Honor indicated, of what may, in fact, be a lot of paper, but

12:25:25  1  we're anticipating a paper review. They, in addition to the

12:25:32  2  State Police and Chicago crime lab records, need to go back

12:25:36  3  into case files in the clerk's office in certain instances in

12:25:41  4  order to understand a little bit more about the case. But

12:25:44  5  that's something that -- you know, that's a burden that we

12:25:48  6  would undertake as a part of our analysis and not something

12:25:52  7  for which we would need to deploy formal discovery at all.

12:25:57  8      So I really think that to a great extent, the

12:26:05  9  arguments that have been put forth a few moments ago are

12:26:08  10  strong-arm arguments that are attacking kind of a blunderbuss

12:26:14  11  approach, which is in fact not what we are up to at all.

12:26:17  12      MR. KULWIN: If I may, Judge?

12:26:18  13      THE COURT: Yes.

12:26:19  14      MR. KULWIN: Mr. Bowman has just told you that that's

12:26:25  15  basically what he wants to find out is who was asking for the

12:26:30  16  test. How do you possibly find that out without interviewing

12:26:34  17  everyone?

12:26:34  18      THE COURT: I am actually -- were I in the

12:26:45  19  plaintiff's shoes here, the first thing I would want to look

12:26:57  20  at, and it could very well stop the prosecution of the civil

12:27:08  21  case, is to take a look and see if the criminalist used

12:27:16  22  standard language or wrote the reports the exact same way,

12:27:24  23  because if the criminalist always used exactly the same

12:27:27  24  language when telling people something that they could

12:27:33  25  interpret to mean there is not enough to sample, it puts a

12:27:43   1   significant dent in my case because my assumption would be

12:27:57   2   that there would be a few cases in these circumstances where

12:28:07   3   it would be possible for me to know who was eager for the

12:28:15   4   test.

12:28:15   5          But if there is not standard language, it's a little

12:28:20   6   different for one test, one than it is another, or there's

12:28:25   7   some that stand out that are very much like the one here.

12:28:31   8          The next thing I suppose I would want to do is to

12:28:36   9   answer the question that Mr. Bowman has posed, which is, who

12:28:40   10  was eager for the test.

12:28:43   11         The problem Mr. Kulwin raises is not nearly the

12:28:50   12  question that if you go back a number of years, you're going

12:28:54   13  to have prosecutors and defense counsel who may not remember

12:28:59   14  who was eager for the test.  The standard procedures by which

12:29:04   15  laboratories work is you get an initial request from the

12:29:08   16  police, and I tend not to count the police because the police,

12:29:17   17  the one element in the adversary system that is not supposed

12:29:23   18  to be adversarial, police are supposed to find out the truth.

12:29:28   19  When you get to the lawyers, you have people who are assigned

12:29:32   20  to make arguments, whatever arguments they can for whatever

12:29:36   21  side there is, whether or not it's the right side or the wrong

12:29:39   22  side.  So the police make this initial request.  And it's hard

12:29:46   23  to put that on the prosecutor's or the defense shoulder.

12:29:53   24         So you I think eliminate a fair number of these cases

12:29:58   25  because you may have only the initial police request, and it's

| | | |
|---|---|---|
| 12:30:04 | 1 | hard to say that anybody's eager for it, partly because as |
| 12:30:12 | 2 | scientific evidence becomes more and more known to the public, |
| 12:30:15 | 3 | the prosecution is under terrific pressure to ask for the |
| 12:30:21 | 4 | tests whenever possible.  The same reason why for many years, |
| 12:30:24 | 5 | if a prosecutor had fingerprint evidence, they would produce |
| 12:30:28 | 6 | fingerprint evidence, and if they didn't, they wouldn't say a |
| 12:30:31 | 7 | word, until it became widely known, in which case the |
| 12:30:35 | 8 | prosecutor had to start putting on witnesses who told the jury |
| 12:30:38 | 9 | why they didn't find a fingerprint, because you had a jury who |
| 12:30:41 | 10 | expected that there would be fingerprints.  And I suppose |
| 12:30:49 | 11 | there's a period of time particularly in a sexual crime where |
| 12:30:54 | 12 | you have a jury sitting wanting to know about the DNA. |
| 12:30:58 | 13 | But the fact that a prosecutor requests the DNA, |
| 12:31:06 | 14 | unless a prosecutor really is very concerned about something, |
| 12:31:12 | 15 | you can't really tell from the prosecutor's request whether |
| 12:31:16 | 16 | they are eager for the result.  Maybe they just want it done |
| 12:31:19 | 17 | because they want to explain to the jury why they don't have |
| 12:31:22 | 18 | it. |
| 12:31:22 | 19 | You ordinarily can make a reasonable inference of |
| 12:31:24 | 20 | when the defense is interested in having the thing done |
| 12:31:29 | 21 | because that almost always occurs later in the case.  You can |
| 12:31:33 | 22 | tell by the chronology that this is when the defense wanted |
| 12:31:36 | 23 | it.  And, presumably, a criminalist who initially prepared a |
| 12:31:44 | 24 | report for the police might draw that inference if a request |
| 12:31:50 | 25 | for a DNA test comes in eight months later, that this is the |

12:31:56    1    request from the defense.  So in that sense, you can make sort

12:32:03    2    of a preliminary screening device.  The difficulty is how

12:32:10    3    you're going to prove in any particular case, you're just

12:32:16    4    going to have to say, well, she must have known that this was

12:32:19    5    a defense test because it came in a year after she did the

12:32:22    6    first test and usually the prosecutor doesn't wait that long.

12:32:29    7    But her knowledge of who wanted the test is a dicey

12:32:35    8    proposition for you.

12:32:36    9            MR. BOWMAN:  I do recognize that burden, and I must

12:32:41   10    say, and I prefer not to give away trade secrets since it's

12:32:46   11    not really our subject this afternoon, but I feel some

12:32:53   12    confidence through circumstantial evidence that we can prove

12:33:02   13    that she must have known that the request originated from the

12:33:09   14    defense in this particular case or that she more probably than

12:33:15   15    not knew because of circumstances that are reflected in the

12:33:21   16    file that I handed to you earlier and because of circumstances

12:33:25   17    that appear in the transcripts.  And, you know, it may in

12:33:34   18    cases that we identify be a dicey problem.  We may find some

12:33:42   19    cases in which we are relying on the timing of the request, as

12:33:45   20    the Court suggested.  There may be other cases like this one

12:33:49   21    where there's stronger circumstantial evidence.

12:33:55   22            MR. KULWIN:  I have to say, Judge, not to be an

12:33:59   23    alarmist, but I think we are going down a slippery evidentiary

12:34:04   24    road here because you're talking about inference upon

12:34:06   25    inference upon inference, you add up enough inferences and you

| | | |
|---|---|---|
| 12:34:11 | 1 | have a highly prejudicial road of evidence. I don't know what |
| 12:34:14 | 2 | this trade secret is, it should be out in the open, he is |
| 12:34:17 | 3 | counsel, he should say it, I mean summarize it. |
| 12:34:19 | 4 | Look, first of all, in this particular case, for |
| 12:34:24 | 5 | example, which does have standard criminalist language, which |
| 12:34:29 | 6 | is basically an inconclusive report, says no DNA profile could |
| 12:34:35 | 7 | be drawn. It also says, as it does here, that DNA would be |
| 12:34:38 | 8 | maintained on file. So right off the bat, it says that. And |
| 12:34:43 | 9 | I think what you're going to find that the reports generally |
| 12:34:47 | 10 | all say is when there is an inconclusive or when there is a |
| 12:34:52 | 11 | conclusive. |
| 12:34:53 | 12 | As to whether or not you now have to prove that it |
| 12:34:55 | 13 | was coming from the defense or not, it strikes me that if the |
| 12:34:58 | 14 | state initially requests something and it's inconclusive and |
| 12:35:04 | 15 | then they request again six months later, they might say try |
| 12:35:07 | 16 | it again because there must be. Or maybe they lose a witness. |
| 12:35:12 | 17 | Who knows? I don't think you can draw any inference at all |
| 12:35:14 | 18 | from a delay. That's first of all. |
| 12:35:17 | 19 | Second of all, regardless of what's being said in the |
| 12:35:22 | 20 | transcript Mr. Bowman references, to the extent it's not |
| 12:35:25 | 21 | hearsay, which sometimes it is, sometimes double and triple, |
| 12:35:29 | 22 | it doesn't indicate at all that Ms. Fish was privy to any of |
| 12:35:33 | 23 | that. She was never in court, she was never present. There |
| 12:35:37 | 24 | is no evidence of conferences or meetings to that extent. |
| 12:35:42 | 25 | That's what I don't understand. |

12:35:42    1    So now we start pulling out as an initial phasing

12:35:46    2    stage all of these quote, unquote, inconclusive things, and we

12:35:50    3    look at them. And then what? The first thing that has to be

12:35:53    4    done was, before we get to anything at all, they are all going

12:35:56    5    to have to be retested, because if they are inconclusive and

12:35:59    6    they are legitimately inconclusive, then what's the relevance?

12:36:04    7    If she was right, who cares? They are inconclusive. You have

12:36:07    8    to get a forensic guy to look at every test and retest every

12:36:12    9    DNA. I am going to want that. This is inconclusive, this guy

12:36:16    10    must have been innocent or guilty. Let's find out if another

12:36:19    11    expert finds out it's inconclusive. That's step one.

12:36:23    12    Step two, if another DNA expert says, actually, there

12:36:26    13    is enough here you could have drawn something, the question

12:36:29    14    is, could you have done it in 1993 as opposed to 2009.

12:36:33    15    The third question is, let's assume you could have,

12:36:36    16    now what do we do? Let's find out did that exonerate the

12:36:40    17    defendant and let him go when he should have been convicted,

12:36:46    18    or, did it put somebody else -- did somebody get convicted on

12:36:50    19    non-DNA evidence. There is that whole thing.

12:36:55    20    Then you have to find out, you have to ascertain from

12:36:57    21    looking at all the files, was this all disclosed. Because if

12:37:01    22    it was all disclosed -- and did they do another test? Did

12:37:05    23    somebody come in and test them? I mean, it just seems to me

12:37:10    24    that since we know that's where we're going -- and then when

12:37:13    25    all of that is done, I would take the position that if you

| | |
|---|---|
| 12:37:17 | 1 |
| 12:37:21 | 2 |
| 12:37:28 | 3 |
| 12:37:32 | 4 |
| 12:37:35 | 5 |
| 12:37:39 | 6 |
| 12:37:42 | 7 |
| 12:37:46 | 8 |
| 12:37:50 | 9 |
| 12:37:53 | 10 |

12:37:17    1    find out of, I don't know, how many files she did in nine
12:37:21    2    years of work, 500, 700, a thousand tests, that she erred 13
12:37:28    3    times, well, yeah, I am going to want statistical testimony.
12:37:32    4    I am going to want to look at it, analyze it, and get all
12:37:35    5    sorts of things.  Because it is highly prejudicial to put any
12:37:39    6    person who is wrongly convicted other than the plaintiff in
12:37:42    7    front of the jury because the jury is going to think, you know
12:37:46    8    what, strike one, strike two, strike three, which is exactly
12:37:50    9    why they want the evidence.  I have been hearing this for
12:37:53   10    three years now.  She has to be horrible because.  She
12:37:57   11    couldn't have done this accidentally because.  That's their
12:38:00   12    argument.  That's the argument they've been making since I got
12:38:03   13    involved in this three years ago, and from what I gather, it's
12:38:07   14    the argument they've been making since Moriarty (phonetic) was
12:38:11   15    writing articles about this 10 years ago.
12:38:13   16          The mere fact that a criminalist errs, as you well
12:38:20   17    know, Judge, doesn't mean there is a level of intent or any
12:38:23   18    type of intent or knowledge.  It may mean that the person
12:38:27   19    isn't all that good.  It may mean that the person swamped with
12:38:30   20    hundreds and hundreds of requests is moving too quickly.
12:38:34   21          Or it may mean, as I saw in some transcripts, rightly
12:38:38   22    or wrongly, that the state's attorney when prepping the
12:38:42   23    witness at trial and when the judges, when she was testifying
12:38:46   24    in front of them and she would intend to elucidate, would tell
12:38:51   25    her, just answer the question.  So, for example, in one case

| | | |
|---|---|---|
| 12:38:53 | 1 | at a preliminary hearing, she completely excluded the |
| 12:38:56 | 2 | defendant after a mild cross-examination, and at the trial, |
| 12:39:01 | 3 | the defense attorney, for reasons unknown to me, asked none of |
| 12:39:05 | 4 | the same questions, she wasn't asked any of them, and a |
| 12:39:07 | 5 | different conclusion was reached. There's just a whole |
| 12:39:14 | 6 | variety of things. |
| 12:39:15 | 7 | I am not -- I am just saying I know that if I was the |
| 12:39:20 | 8 | plaintiff, yeah, I would love, I would give anything, to have |
| 12:39:22 | 9 | in front of this jury that others that Ms. Fish examined were |
| 12:39:28 | 10 | wrongfully imprisoned. Why? Who cares? Once the jury hears |
| 12:39:34 | 11 | that, it is game, set, and match for the plaintiff, in my |
| 12:39:38 | 12 | opinion. I don't think that's an exaggeration. And if they |
| 12:39:41 | 13 | hear about it twice, they are not going to make five niceties |
| 12:39:44 | 14 | about, well, does it prove knowledge, does it prove intent, |
| 12:39:48 | 15 | does it prove motive? |
| 12:39:49 | 16 | So it's very highly prejudicial evidence, and if we |
| 12:39:53 | 17 | are going to be able to do it, then the defense has to be able |
| 12:39:55 | 18 | to make a strong and lengthy counter-presentation about the |
| 12:39:59 | 19 | nature of each one of these -- |
| 12:40:01 | 20 | THE COURT: I wouldn't worry about that. That's what |
| 12:40:03 | 21 | I started with. |
| 12:40:04 | 22 | MR. KULWIN: But I don't want to -- my view of it is |
| 12:40:08 | 23 | it's expensive and it's lengthy. |
| 12:40:10 | 24 | THE COURT: The problem with this case, like the |
| 12:40:27 | 25 | problem of citing other district judges who have allowed or |

| | | |
|---|---|---|
| 12:40:31 | 1 | refused discovery and discovery briefs, the problem with this |
| 12:40:39 | 2 | case is it is the same problem as citations is volume, |
| 12:40:47 | 3 | enormous volume, and there is no proposition on which -- with |
| 12:40:51 | 4 | respect to discovery. I wagered this. I have no scientific |
| 12:40:55 | 5 | basis. But I wager there is no discovery issue addressed by a |
| 12:41:01 | 6 | district judge sitting alone and reporting F.Supp. and FRE on |
| 12:41:07 | 7 | any issue in which you cannot find at least two district |
| 12:41:11 | 8 | judges, two opinions on each side. And the finicky thing is |
| 12:41:19 | 9 | when lawyers quote that to you, they never quote the details. |
| 12:41:24 | 10 | They always quote the language, the preparatory language about |
| 12:41:30 | 11 | the great need for discovery and on the other side pointless |
| 12:41:34 | 12 | and expensive fishing expeditions. You see those over and |
| 12:41:39 | 13 | over and over again. |
| 12:41:41 | 14 | MR. KULWIN: That way you're disappointed. |
| 12:41:46 | 15 | THE COURT: It's okay. I come to expect it. |
| 12:41:49 | 16 | What I have here is Mr. Bowman's argument that this |
| 12:41:58 | 17 | discovery could help him. I think he's fairly careful to say |
| 12:42:04 | 18 | that he doesn't know that it will help him. And your argument |
| 12:42:11 | 19 | is if you look at the dynamics of it, it probably won't help |
| 12:42:15 | 20 | him. |
| 12:42:18 | 21 | From my perspective, I don't really want to sit here |
| 12:42:27 | 22 | and guess, to some extent as both of you are doing, what's |
| 12:42:31 | 23 | behind the curtain. I don't criticize you for this. It's |
| 12:42:34 | 24 | what lawyers do in discovery. They give their best guess as |
| 12:42:40 | 25 | to what's going to occur. I am willing to test it. And the |

12:42:44    1   reason I am willing to test it is you don't have to do, what

12:42:52    2   is it, nine years, ten years, whatever it is. You don't need

12:42:56    3   to do all nine or ten years. You can pick a year or two.

12:42:59    4   Take a look at what you've got, come to me, and somebody will

12:43:05    5   say, see, I was right, or what may also be likely is both of

12:43:10    6   you will come to me and see, I was right.

12:43:15    7           So I am proposing two years, and I am proposing that

12:43:24    8   the two years of the entire period not be consecutive years.

12:43:34    9   There could be an argument that you don't need a full year,

12:43:38   10   six months of a year would work. That would be fine with me

12:43:43   11   too. Because it is going to be expensive, and the plaintiff

12:43:51   12   is going to have to bear a lot of that expense, time, and

12:43:56   13   effort.

12:43:58   14           With respect to what would happen if they find other

12:44:08   15   errors and you've got wrongful convictions, they would face

12:44:18   16   some barrier in getting that evidence in because they couldn't

12:44:23   17   get it in simply because some test was not done, the proper

12:44:30   18   test was not done, or what was done was not properly reported,

12:44:36   19   unless they can show, in a fairly direct way, causation.

12:44:42   20           One of the difficulties with trying to get the

12:44:46   21   evidence gatherer and evidence analyst and making them

12:44:52   22   responsible for any wrong result in any court case is that

12:45:00   23   there's so many intervening factors in the causation analysis.

12:45:06   24   You've got bad defense lawyers, you've got ruthless

12:45:11   25   prosecutors, you've got judges who make errors in the course

| | | |
|---|---|---|
| 12:45:16 | 1 | of the case.  There are lots of reasons why somebody might be |
| 12:45:22 | 2 | wrongfully convicted, and you can't really put the causation |
| 12:45:28 | 3 | on the -- and I am talking -- I'm assuming for this purpose |
| 12:45:32 | 4 | that there is absolute evidence of exoneration.  I'm assuming |
| 12:45:37 | 5 | that is the case. |
| 12:45:38 | 6 | It's still difficult to prove that this particular |
| 12:45:42 | 7 | test result is the cause of it.  And one of the reasons is is |
| 12:45:47 | 8 | that criminalists do not operate on the same standards, for |
| 12:45:50 | 9 | example, as a hospital pathology lab, because what follows the |
| 12:45:55 | 10 | result of a pathology analysis, or even a DNA analysis, |
| 12:46:04 | 11 | because they do that for some forms of medical treatment, is |
| 12:46:07 | 12 | there is no adversary process that follows it.  You know, |
| 12:46:11 | 13 | nobody comes in and says there's some other doctor.  Well, get |
| 12:46:15 | 14 | your own expert, see if the pathology is a little different. |
| 12:46:18 | 15 | The weight that's put on medical use of test results is much, |
| 12:46:23 | 16 | much heavier than that in adversary systems. |
| 12:46:34 | 17 | So there is a long road between that.  And it's I |
| 12:46:38 | 18 | think worth doing.  And in inferring from what you have said |
| 12:46:44 | 19 | and what Mr. Bowman has said, that in the long course of |
| 12:46:47 | 20 | litigation involving this particular criminalist, this |
| 12:46:51 | 21 | particular sort of analysis has not been done; is that right? |
| 12:46:56 | 22 | MR. BOWMAN:  It is. |
| 12:46:57 | 23 | MR. KULWIN:  I don't think it's been done in the |
| 12:46:58 | 24 | context of any particular case.  I don't know.  I'd have to |
| 12:47:01 | 25 | yield to Mr. Timbo or the City to find out whether they did an |

12:47:04    1    audit of all her files in the past.  If I can find that out,

12:47:10    2    or Mr. Timbo, I don't know.

12:47:12    3          THE COURT:  And whatever they did might be helpful,

12:47:15    4    but it won't be looked at in the same way that Mr. Bowman

12:47:20    5    looked at.

12:47:20    6          So you can discuss with each other what you regard as

12:47:25    7    an appropriate sampling process, and we will see where we go

12:47:31    8    from there.

12:47:32    9          MR. KULWIN:  I would just raise a couple of

12:47:34   10    questions, Judge, if I could.

12:47:35   11          THE COURT:  Sure.

12:47:35   12          MR. KULWIN:  The first question is I assume that

12:47:38   13    whatever this appropriate sample that we are talking about is

12:47:42   14    limited to DNA tests that are inconclusive at this point.

12:47:46   15          THE COURT:  We are doing DNA tests.  We are not doing

12:47:51   16    -- no other chemistries.

12:47:53   17          MR. KULWIN:  And it's just ones where it was

12:47:55   18    inconclusive, is that my other further understanding?

12:47:58   19          THE COURT:  The truth of the matter is you are going

12:48:00   20    to have to look at a fair number of them.  The ones that they

12:48:04   21    are going to be particularly interested in are the

12:48:07   22    inconclusive ones.

12:48:08   23          This is not the kind of case -- I mean, one of the

12:48:12   24    threshold issues that this plaintiff has to face is that if

12:48:18   25    you want to portray a picture of a ruthless criminalist who is

| | | |
|---|---|---|
| 12:48:28 | 1 | determined to put this guy in jail because she doesn't like |
| 12:48:38 | 2 | his taste in clothing, which of course she would not have |
| 12:48:42 | 3 | known, they can't get anywhere with that because the material |
| 12:48:46 | 4 | was preserved and not destroyed. They're looking basically |
| 12:48:51 | 5 | for something that looks a little like either reckless |
| 12:48:57 | 6 | behavior or behavior that was designed to help out the team. |
| 12:49:07 | 7 | MR. KULWIN: So they get to look at two years of DNA |
| 12:49:10 | 8 | to be randomly selected -- |
| 12:49:12 | 9 | THE COURT: Well, what's going to happen, you are |
| 12:49:14 | 10 | going to select two years, and it's not going to be a random |
| 12:49:18 | 11 | selection. And I am perfectly willing to let each side pick |
| 12:49:22 | 12 | one period. But I don't think that that's absolutely |
| 12:49:25 | 13 | necessary. The only burden I am imposing -- the only |
| 12:49:29 | 14 | condition I am imposing is not two consecutive periods. And |
| 12:49:37 | 15 | you'll go through them, and you will have some kind of idea. |
| 12:49:41 | 16 | And the other thing is given the difficulty that is |
| 12:49:44 | 17 | inherent in this case against this defendant, the sooner |
| 12:49:51 | 18 | Mr. Bowman knows that he has or does not have a chance, the |
| 12:49:54 | 19 | better it is for everybody. Okay? |
| 12:50:00 | 20 | Do I have another status set for this? |
| 12:50:02 | 21 | MR. BOWMAN: We don't. |
| 12:50:04 | 22 | THE COURT: Second week of February. And then tell |
| 12:50:07 | 23 | me what my parting remarks have led to. |
| 12:50:15 | 24 | MR. BOWMAN: Sounds good. |
| 12:50:17 | 25 | THE CLERK: February 10th at 10:00 a.m. |

12:50:22   1          MR. KULWIN:  Thanks, Judge.

12:50:24   2          THE COURT:  Thanks, Counsel.

12:50:25   3          MR. BOWMAN:  Thanks, Judge.

12:50:25   4          MS. PARLING:  Thank you, your Honor.

           5     (Which were all the proceedings had in the above-entitled

           6   cause on the day and date aforesaid.)

           7      I certify that the foregoing is a correct transcript from
               the record of proceedings in the above-entitled matter.
           8

           9   Carolyn R. Cox                          Date
               Official Court Reporter
          10   Northern District of Illinois

          11   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

          12

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25